# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **RONALD COKER, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:05-CV-0005-M** |
| **v.** | § | |
| | § | |
| **DALLAS COUNTY JAIL, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, & RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's *Standing Order of Reference*, filed October 11, 2006, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Currently before the Court are the following pleadings:

(1)  *Defendants' Joint Motion for Summary Judgment*,[1] filed March 14, 2007 ("MSJ");

(2)  *Joint Memorandum Brief in Support of Defendants' Motion for Summary Judgment*,[2] filed March 14, 2007 ("MSJ Br.");

---

[1] The Court ordered all defendants, who had answered Plaintiff's suit, to file a joint motion for summary judgment regarding the qualified immunity defense. *See* Doc. No. 122 (3:05cv0005-M) (Dec. 9, 2006) (Order granting Motion for Rule 7(a) Reply). Defendants filed a pleading titled *Defendants' Joint Motion for Summary Judgment*, but actually submitted two separate documents tabbed as exhibits I and II. Exhibit I is a motion for summary judgment on behalf of Defendants Moody and Bowers (collectively "State Defendants"), and Exhibit II is a motion for summary judgment on behalf of Defendants Charles Prater ("Officer Prater"), Anthony Porter ("Officer Porter"), and Eleazar Chapa ("Officer Chapa") (collectively "Dallas County Defendants"). The document in each exhibit is separately paginated. To avoid confusion, the Court will refer to the page numbers at the top of the electronically filed version.

[2] This document also combines two separate documents, the *State Defendants' Brief in Support of Motion for Summary Judgment* and *Memorandum Brief in Support of Dallas County Defendants' Motion for Summary Judgment*, each with its own page-numbering. To avoid confusion, the Court will refer to the page numbers at the top of the electronically filed version.

(3)     *Defendants' Joint Appendix in Support of Motion for Summary Judgment*, filed March 15, 2007 ("Defs. Joint App. in Support of MSJ");

(4)     *Defendants' Motion to Strike*, filed April 13, 2007 ("State Defs.' Mot. Strike");

(5)     *Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment*, filed April 23, 2007 ("Plaintiff's Decl.");

(6)     *Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion*, filed April 23, 2007 ("Plaintiff's Br. in Opposition to MSJ");

(7)     *Plaintiff's Factual Basis in Support of His Motion in Opposition of Defendants' Summary Judgment Motion*, filed April 23, 2007 ("Plaintiff's Factual Basis");

(8)     *Plaintiff's Appendix in Support of Motion of Opposition to Defendants' Summary Judgment Motion*, filed April 23, 2007 ("Plaintiff's App. in Opposition to MSJ");

(9)     *Plaintiff's Statement of Disputed Factual Issues*, filed April 23, 2007 ("Plaintiff's Statement");

(10)    *Dallas County Defendants' Motion to Strike and Brief in Support*, filed April 27, 2007 ("Dallas County Defs.' Mot. Strike");

(11)    *Defendants' Reply to Plaintiff's Response in Opposition to Summary Judgment*, filed April 27, 2007 ("Reply"); and

(12)    *Dallas County Defendants' Objections to Exhibits in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment*, filed April 27, 2007 ("Dallas County Defs.' Obj.").

Based on the pleadings and the applicable law, the Court recommends that Defendants' joint motion for summary judgment be **GRANTED in part** and **DENIED in part**. Further, the Court finds that Defendants' motions to strike should be denied.

## I. BACKGROUND

**A.     Factual Background**

Ronald Coker, Jr. ("Plaintiff") was incarcerated as a pretrial detainee at the Dallas County Jail from November 17, 2003 to approximately April 11, 2005, on charges of aggravated robbery

and a parole violation. (*See* MJQ[3] at 7). The extensive medical records submitted by the parties detail Plaintiff's medical treatment at the Dallas County Jail and Parkland Memorial Hospital ("Parkland").

According to an intake evaluation form completed upon Plaintiff's incarceration at the Dallas County Jail on November 17, 2003, he suffered from a number of health problems and was taking several medications. (*See* Defs. Joint App. in Support of MSJ at 34). Specifically, Plaintiff had a history of bipolar disorder, diabetes, heart disease, hypertension, seizures, and paralysis of his right side. (*Id.*). Plaintiff first complained of a "deep pain in [the] left lower tibial area" on or about March 1, 2004. (*Id.* at 61). He was examined by Dallas County Jail medical staff, whose initial assessment was that Plaintiff could have a viral syndrome and they needed to rule out phlebitis. (*Id.*). Several blood tests were ordered, and Plaintiff was advised to return to his cell, recline, elevate his legs, and to report any increased pain or swelling. (*See* Defs. Joint App. in Support of MSJ at 62). The next day, March 2, 2004, Plaintiff complained of increased pain and swelling in his left leg. (*Id.* at 60). After an examination, Dallas County Jail medical staff noted that Plaintiff could have cellulitis[4] and prescribed an antibiotic (Keflex) and ibuprofen. (*Id.*).

On April 7, 2004, Plaintiff was examined by Dallas County Jail medical staff based on a new onset of redness and swelling of his left leg. (Defs. Joint App. in Support of MSJ at 54). Plaintiff was prescribed pain medication and antibiotics. (*Id.*). On April 10, Plaintiff was additionally prescribed Cipro for the abscess in his left leg as well as daily wound care. (*Id.* at 52). On April 13,

---

[3] "MJQ" refers to Plaintiff's responses to the Magistrate Judge's Questionnaire.

[4] Cellulitis is an inflammation of the soft or connective tissue, in which a thin, watery exudate spreads through the cleavage planes of interstitial and tissue spaces; it may lead to ulceration and abscess. *See* http://medical-dictionary.thefreedictionary.com/p/cellulitis.

2004, Plaintiff complained of severe pain in his leg, rapid heartbeat, chest pain, fever, and chills. (*Id.* at 50). Defendant Moody noted that Plaintiff's temperature had been elevated for five days and had gone as high as 104 degrees. (*Id.*) Defendant Moody's assessment of Plaintiff's condition was that he had sepsis and cellulitis. (*Id*. at 51). She prescribed Plaintiff pain medication and ordered that he be transported to Parkland for emergency treatment. (*Id.* at 51).

At Parkland, Plaintiff was admitted, given intravenous antibiotics, and taken to surgery on April 14, 2004 to drain and debride the abscess in his lower left leg. (*See* Plaintiff's App. in Opposition to MSJ at 37). The medical history taken by doctors at Parkland indicates that Plaintiff's left-leg infection had been incised and drained twice at the jail in the previous three weeks. (*Id.*). He was discharged back to the Dallas County Jail with prescriptions for pain medication and wound care on April 15, 2004. (*Id.*).

On May 14, 2004, while at the Dallas County Jail, Plaintiff was again diagnosed with cellulitis, this time on his chin. (*See* Defs. Joint App. in Support of MSJ at 47). He was prescribed antibiotics. (*Id.* at 48.)

Plaintiff was readmitted to Parkland on June 30, 2004 through July 3, 2004 for an infection in his left lower leg that had persisted for approximately two weeks and had not improved with antibiotics he was currently taking. (*See* Plaintiff's App. in Opposition to MSJ at 38). Parkland's records show that a culture done on June 30, 2004 resulted positive for Methicillin-resistant Staphylococcus aureus ("MRSA"). (*See* Defs. Joint App. in Support of MSJ at 82; Plaintiff's App. in Opposition to MSJ at 43).

On August 4, 2004, the Dallas County Jail medical staff examined Plaintiff for another infection in his left leg that "continues w/o improvement, has area of fluctuance new, white blanched

- 4 -

area amid this x2, very painful to touch." (*See* Defs. Joint App. in Support of MSJ at 46). Because Plaintiff refused to allow Dallas County Jail medical staff to incise and drain the abscess, he was transported to Parkland for intravenous antibiotic therapy and incision and draining. (*Id.*). The medical history regarding this admission shows Plaintiff had complained of the abscess in his left leg for approximately two weeks. (*See* Plaintiff's App. in Opposition to MSJ at 39). Blood cultures performed during this hospital admission were again positive for MRSA. (*Id.* at 42.) Plaintiff underwent surgery on the abscess on August 4, 2004. (*Id.* at 40). He was discharged on August 7, 2004 with instructions for wound care. *Id.* at 39-42.

On August 22, 2004, Plaintiff complained to Dallas County Jail medical staff that he had pain and swelling in his lower left leg and was unable to stand. (*See* Defs. Joint App. in Support of MSJ at 45). After examination, Defendant Moody ordered that he be transferred to Parkland by squad car. (*Id.*).

Plaintiff was admitted to Parkland from August 23, 2004 to August 28, 2004 for antibiotic treatment of his cellulitis. (*See* Plaintiff's App. in Opposition to MSJ at 42). The hospital records reflect that Plaintiff complained he'd had increasing redness and tenderness in his left lower leg over the past three weeks. (*Id.*). Plaintiff returned to Parkland on August 31, 2004 with "worsening cellulitis, which ha[d] spread to the inferior and lateral aspect of his left calf." (*Id.* at 43). He was treated with eight days of intravenous antibiotics and discharged to the Dallas County Jail with instructions to complete an additional six-week treatment of intravenous antibiotics. (*Id.* at 44).

Plaintiff was readmitted to Parkland two weeks later on September 21, 2004 with complaints of worsening cellulitis in his left lower leg despite his being on intravenous antibiotics. (*See* Plaintiff's App. in Opposition to MSJ at 45). Blood cultures performed during this hospital stay

were negative for MRSA and further tests ruled out deep venous thrombosis and osteomyelitis. (*Id.* at 46). Plaintiff was treated with an additional antibiotic, namely Timentin. (*Id.*). Plaintiff responded well to the Timentin, and before being discharged on September 24, 2004, his medication was switched to Augmentin. (*Id.* at 47). Plaintiff returned to Parkland on September 27, 2004 with worsening cellulitis. (*Id.*). Parkland's notes on the history of this illness indicate that Dallas County Jail did not have Augmentin on the formulary, "therefore they decided to treat [Plaintiff] with Rifampin and his cellulitis promptly recurred three days later." (*Id.*). After Plaintiff's condition was stable, he was discharged on September 30, 2004 with prescriptions for continued intravenous antibiotics, and medications for his hyperthyroidism and high blood pressure. (*Id.* at 48). "It was also recommended that the jail facilities not shackle his left lower extremity as it may contribute to his recurrent cellulitis." (*Id.*).

Plaintiff was sent back to Parkland on October 8 because his cellulitis had again worsened. (*See* Defs. Joint App. in Support of MSJ at 82). Plaintiff "was admitted to the floor and was started on intravenous vancomycin 1.5g 12h and IV Timentin 3.1 g q4h." (*Id.*).

On October 31, 2004, Dallas County Jail medical staff noted that Plaintiff's peripherally inserted central catheter ("PICC") line would not flush. (*See* Defs. Joint App. in Support of MSJ at 27). Parkland's records indicate that Plaintiff was admitted on October 31, 2004 with a recurrence of cellulitis in his left lower leg. (*See* Plaintiff's App. in Opposition to MSJ at 49). Further, the medical notes also indicate that "[t]he PICC line was clotted on admission." (*Id.*). The PICC line was removed and cultured and the "tip grew out Proteus mirabilis[5] and Klebsiella pneumoniae."

---

[5] Proteus mirabilis and Klebsiella pneumoniae are gram-negative bacteria. *See* http://en.wikipedia.org/wiki/Proteus_mirabilis; http://en.wikipedia.org/wiki/klebsiella_pneumoniae.

(*See id.*).  Plaintiff was discharged to the Dallas County Jail on November 6, 2004.  (*See* Defs. Joint

App. in Support of MSJ at 25-26).

Plaintiff complained of severe pain to his left lower leg on November 10, 2004.  (*Id.* at 23).

An examination by Dallas County Jail medical staff revealed he had a bruise pattern on his left mid

leg surrounded by redness.  (*Id.*).  He was started on an antidepressant (Amitriptyline HCL) that had

been withheld for "noncompliance" and notations were made to follow-up for pain management.

(*Id.* at 24).  Additional notes reflect that Plaintiff threatened to "pop . . . open" his abscess if pain

medication was not provided immediately.  (*Id.*).

Plaintiff was admitted to Parkland on or about December 14, 2004 for recurrent cellulitis on

his lower left leg.  (*See* Defs. Joint App. in Support of MSJ at 88).  He was treated with antibiotics

and pain medication, which resulted in stabilization.  (*Id.*).  On December 22, 2004, Plaintiff was

back at the Dallas County Jail and signed a written acknowledgment refusing his medications.  (*Id.*

at 21).  On December 30, 2004, Plaintiff complained to Dallas County Jail medical staff that he was

experiencing increased pain in his lower left leg and asked to be transported to the hospital.  (*Id.* at

18).  The medical notes reflect Plaintiff had an "8cm area that has increased redness, flushes, very

red, has small pinpoint areas."  (*See id.*).  Dallas County Jail medical staff examined and treated the

abscess in Plaintiff's leg and the treatment plan included obtaining the results of a biopsy from

Parkland and further monitoring to check for improvement.  (*Id.* at 19).

On February 7, 2005, Dallas County Jail medical staff examined the recurring infection in

Plaintiff's leg and concluded that since Plaintiff had been off the antibiotics for a while, he needed

intravenous therapy at Parkland to treat his infection.  (*See* Defs. Joint App. in Support of MSJ at

16).  Plaintiff was admitted to Parkland again for cellulitis on February 8, 2005.  (*See* Plaintiff's

App. in Opposition to MSJ at 50). Parkland medical notes indicate Plaintiff "present[ed] with a two week history of increasing swelling, erythema and tenderness of his left lower extremity. . . . Seen by surgery, who noted the erythema and edema with multiple area of fluctuance and induration from his ankle to his knee. There was a bedside ultrasound performed that showed edematous tissue, no abscess, nothing to drain." (*Id.*). The attending physician who treated Plaintiff at Parkland during this hospitalization noted that Plaintiff's condition typically improved while he was in the hospital and then worsened while Plaintiff was at the jail, opining that "[t]here is a concern that the patient is not compliant, and also possibly self-inflicts this." (*See* Defs. Joint App. in Support of MSJ at 72). Plaintiff was discharged to the Dallas County Jail on February 11, 2005, where he was examined upon arrival and Dallas County Jail medical staff noted that his condition was stable. (*Id.* at 15).

While Plaintiff was at an appointment at the endocrine clinic on February 17, 2005, he was sent to Parkland's emergency room for treatment of the cellulitis in his lower left leg. (*See* Defs. Joint App. in Support of MSJ at 12).

Plaintiff returned to Parkland on March 8, 2005 because of an abscess in his lower left leg. (*See* Plaintiff's App. in Opposition to MSJ at 51). He again underwent surgery in which doctors performed multiple incisions and drainage of the abscess in Plaintiff's lower left leg. (*Id.*). He was post-operatively treated with antibiotics and discharged with instructions regarding proper wound care. (*Id.* at 51-52).

Plaintiff was once again sent to Parkland for antibiotic treatment of his cellulitis on March 22, 2005, and then discharged on March 25. (*See* Defs. Joint App. in Support of MSJ at 80). On March 29, 2005, Plaintiff was sent back to Parkland because of cellulitis and again received antibiotic treatment. (*Id.* at 77). Plaintiff was transferred to the Texas Department of Criminal

Justice-Correctional Institutions Division on or about April 11, 2005. *See* Doc. No. 10 (3:05-CV-0005-M) (N.D. Tex. Apr. 15, 2005). He is currently confined at the Powledge Unit of the Texas Department of Criminal Justice-Correctional Institutions Division. *See* Doc. No. 150, 3:05-CV-0005-M (N.D. Tex. Aug. 15, 2007) (Notice of Change of Address).

**B.      Procedural History**

On January 3, 2005, Plaintiff filed this action under 42 U.S.C. § 1983 alleging that various individuals violated his constitutional rights by failing to provide adequate medical care, failing to provide adequate sanitation, depriving him of a wheelchair, and by sexually assaulting him. (*See* Am. Compl. at 3). Specifically, Plaintiff brings the following claims against these individuals:[6]

> (1)      Nurse Dorothy Jackson for (a) wheelchair deprivation, (b) refusal of medical treatment, and (c) unsanitary living conditions;[7]
>
> (2)      Physician's Assistant Linda Moody for (a) denial and delay of proper medical care, (b) medical malpractice, and (c) unsanitary living conditions;[8]
>
> (3)      Dr. Stephen Bowers for (a) inadequately supervising Defendant Moody, (b) not allowing Plaintiff to receive prescribed medication from Parkland Hospital, and (c)

---

[6] Plaintiff's repeated attempts to file procedurally deficient amendments to his complaint may have created some confusion by the parties concerning Plaintiff's exact claims. The Court has only granted only one proposed amendment, filed May 19, 2006, as a supplement to Plaintiff's complaint. That supplement only changes Plaintiff's prayer for relief; thus, only the claims alleged in Plaintiff's § 1983 amended complaint filed January 24, 2005, in the MJQ filed March 3, 2005, and in the Rule 7(a) reply filed December 27, 2006, are before the Court. *See Macias v. Raul A. (unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (noting that a plaintiff's answers to questions posed by the Court constitute an amendment to the filed complaint); *Teel v. Collins*, 59 F.3d 1242, 1242 (5th Cir. 1995) (same); *see also Meekins v. Thompson*, 252 F.3d 1356 (5th Cir. 2001) (noting that a Rule 7(a) reply augments the complaint).

[7] Referred to by Plaintiff as "Miss Dorothy", Defendant Jackson allegedly worked during the third watch at the Dallas County Jail at the time of Plaintiff's incarceration. (Am. Compl. at 3). She has not been served nor otherwise appeared in this action.

[8] "Miss Moody" worked in the medical department of the Dallas County Jail at the time of Plaintiff's incarceration. (MSJ at 7; Defs. Joint App. in Support of MSJ at 11).

unsanitary living conditions;[9]

    (4)      Officer Charles Prater for (a) sexual assault and (b) unsanitary living conditions;[10]

    (5)      Officer Anthony Porter for unsanitary living conditions;[11] and

    (6)      Officer Eleazar Chapa for unsanitary living conditions.[12]

(*See* Am. Compl.[13] at 3; MJQ at 1-5). Plaintiff seeks monetary[14] damages as well as the arrest of Officer Prater for committing a sexual assault. (Am. Compl. at 4). He contends that Defendants were deliberately indifferent to his serious medical needs for his repeated cellulitis and abscesses in his lower left leg. He further alleges Defendants exacerbated his infections by subjecting him to unsanitary conditions and then delaying in transferring him to Parkland until his infections worsened, and he had to undergo several surgeries which resulted in severe pain and disfigurement. (*See* Plaintiff's Decl. at 1-2).

On September 29, 2006, Defendant Bowers filed a motion for Rule 7(a) reply, which the Court granted. *See* Doc. No. 122, (3:05-CV-0005-M) (N.D. Tex. Dec. 9, 2006). On December 27,

---

[9] Dr. Bowers was the medical director at the Dallas County Jail at the time of Plaintiff's incarceration. (MSJ at 10).

[10] Officer Charles Prater is an authorized officer of the Dallas County Sheriff's Department assigned to duty in the Dallas County Jail. (Defs. Joint App. in Support of MSJ at 89).

[11] Officer Anthony Porter is an authorized officer of the Dallas County Sheriff's Department assigned to duty in the Dallas County Jail. (Defs. Joint App. in Support of MSJ at 91).

[12] Officer Eleazar Chapa is an authorized officer of the Dallas County Sheriff's Department assigned to duty in the Dallas County Jail. (Defs. Joint App. in Support of MSJ at 93).

[13] The amended complaint filed January 24, 2005, does not contain a page numbered as two, but rather skips directly from page one to page three.

[14] Plaintiff filed a motion for leave to file an amended complaint on May 19, 2006, wherein he sought to change his prayer for relief to reflect he is seeking punitive damages rather than compensatory damages. *See* Doc. No. 54 (3:05-CV-0005-M) (N.D. Tex. May 19, 2006). The Court granted Plaintiff's motion for leave as modified and ordered that Plaintiff's proposed amendment be filed as a supplement to his pleadings. *See* Doc. No. 59 (3:05-CV-0005-M) (N.D. Tex. Jun. 9, 2006).

2006, Plaintiff filed a Rule 7(a) Reply augmenting his claims against Defendant Bowers. *See* Doc.

No. 123 (3:05-CV-0005-M) (N.D. Tex. Dec. 27, 2006). In its order granting Defendant Bowers'

motion for a Rule 7(a) Reply, the Court also ordered all defendants who had answered Plaintiff's

suit to file a joint motion for summary judgment on qualified immunity. Accordingly, Defendants

Moody, Bowers, Prater, Porter, and Chapa jointly filed motions for summary judgment based on

qualified immunity. (MSJ at 5, 12; MSJ Br. at 4, 20.) Defendants Moody and Bowers also move

for summary judgment on Plaintiff's official-capacity claims on the grounds they are barred by

Eleventh Amendment immunity. (MSJ Br. at 14-15). Plaintiff filed responses in opposition to

Defendants' joint motion for summary judgment along with other pleadings. The issues are now

ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine

issue exists as to any material fact and that the moving party is entitled to judgment as a matter of

law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The

movant makes a showing that there is no genuine issue of material fact by informing the court of the

basis of its motion and by identifying the portions of the record which reveal there are no genuine

material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions,

admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.

FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention

to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor. *See Hurd v. Doe*, No. Civ.A. 301CV2668L, 2003 WL 21640569, at *3 (N.D. Tex. July 10, 2003). However, under FED. R. CIV. P. 56, the court does not have an obligation to "'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, No. Civ.A. 3:01-CV-1237L, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

### III.  MOTIONS TO STRIKE and EVIDENTIARY OBJECTIONS

Both the State and Dallas County Defendants have filed a motion to strike the affidavits of Bonnie J. Rodriguez, Ronald Stribling, and Kevin Coker, which Plaintiff filed with the Court on April 4, 2007.  (State Defs.' Mot. to Strike at 2; Dallas County Defs.' Mot. to Strike at 1-2; Doc. Nos. 137-139 (3:05-CV-0005-M) (N.D. Tex. Apr. 4, 2004).  On April 23, 2007, however, Plaintiff resubmitted these affidavits as exhibits in his appendix supporting his response and opposition to Defendants' motion for summary judgment.  (*See* Plaintiff's App. in Opposition to MSJ at 1, 13, 17).  On April 27, 2007, the Dallas County Defendants reurged their objections to the affidavits in Plaintiff's appendix, but the State Defendants did not.  *See* Doc. No. 148 (3:05-CV-0005-M) (N.D. Tex. Apr. 27, 2007).

In their motion to strike, the Dallas County Defendants argue that because Plaintiff failed to serve the affidavits in compliance with Rule 5 of the Federal Rules of Civil Procedure, they should be struck.  (Dallas County Defs.' Mot. to Strike at 2).  Plaintiff responds that his failure to serve these affidavits was the result of his misunderstanding Rule 5.  (Plaintiff's Resp. at 2).  The Court declines to strike Plaintiff's documents for failure to serve the Dallas County Defendants. Defendants have not been prejudiced because the record reflects they had notice through ECF that Plaintiff filed the affidavits as well as an opportunity to reply.[15]  However, Plaintiff is expressly admonished that all future documents submitted to the Court must also be served on the Defendants pursuant to Fed. R. Civ. P. 5, and failure to comply may result in sanctions.

---

[15]  When a document is filed and entered in the docket, attorneys of record registered with the Court's electronic filing system receive a notice that is automatically generated by ECF.  *See* N.D. Loc. R. 5.1(d).

Further, Defendants[16] object to the affidavits of Bonnie J. Rodriguez and Kevin Coker on grounds of hearsay. (Dallas County Defs.' Obj. at 2-3; State Defs.' Mot. to Strike at 2-3). Courts may only consider competent summary judgment evidence in deciding whether a genuine issue of material fact exists for purposes of summary judgment. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (holding that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in opposing a motion for summary judgment). Because the Court has not relied on these affidavits in reaching its conclusions regarding Defendants' joint motion for summary judgment, the State Defendants' motion to strike is denied as moot, and the Dallas County Defendants' objections are overruled as moot.

Defendants similarly object to the affidavit of Ronald Stribling because it contains hearsay, lacks relevance, and contains conclusory statements. (Dallas County Defs.' Obj. at 1-2; State Defs' Mot. to Strike at 3). In his affidavit, Mr. Stribling avers that he is "personally acquainted with the facts herein stated," and he provides an account of the handicapped shower's typical condition and his own account of the Dallas County Defendants' knowledge of the shower's typical condition. (*See* Plaintiff's App. in Opposition to MSJ at 1-2, 4). Mr. Stribling further avers that his affidavit is based on conditions "during his incarceration at the Dallas County Jail." (*Id.* at 4). Accordingly, to the extent that Stribling's affidavit provides a personal account of the handicapped shower's typical condition and the Dallas County Defendants' knowledge of the shower's typical condition, this testimony constitutes relevant summary judgment evidence. To the extent that Mr. Stribling's

---

[16] The State Defendants initially moved to strike the affidavits of Bonnie J. Rodriguez, Ronald Stribling and Kevin Coker on essentially the same grounds urged in the Dallas County Defendants' objections. The Court therefore addresses these arguments together.

affidavit contains statements that constitute hearsay or are conclusory, the Court does not consider such statements in reaching its conclusions on Defendants' joint motion for summary judgment. *Salas v. Carpenter,* 980 F.2d 299, 304 (5th Cir. 1992) (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). Accordingly, the Court overrules the Dallas County Defendants' objections to Mr. Stribling's affidavit and denies the State Defendants' motion to strike the same affidavit.

## IV.  ANALYSIS

Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights through their deliberate indifference to his serious medical needs, by subjecting him to unsanitary living conditions, by depriving him of a wheelchair, and by sexually assaulting him. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Section 1983 reaches only those constitutional injuries caused by persons acting under color of state law. *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980). When the defendant is a private individual, the allegedly unconstitutional conduct must be "fairly attributable to the state." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

Defendants move for summary judgment on the grounds that the pleadings and summary

judgment evidence establish as a matter of law that Plaintiff's claims against them are barred.  Each of their defenses is addressed in turn.

A.       **Eleventh Amendment Immunity**

Defendants Moody and Bowers assert that they are entitled to summary judgment on Plaintiff's claims against them in their official capacities on the basis of Eleventh Amendment immunity.[17]   (MSJ Br. at 15).

The Eleventh Amendment provides:  "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "This withdrawal of jurisdiction effectively confers an immunity from suit."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Stated simply, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the state itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity extends to suits for monetary damages against state officials in their official capacity.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 n.10 (2001) ("Only States and state officers acting in their official

---

[17] When listing Defendants on his amended complaint, Plaintiff wrote "(Dallas County Jail)" before each Defendant's name.  (Am. Compl. at 3.)  Plaintiff's notation may be construed to allege his claims against defendants in an official capacity, as well as individually.  Plaintiff cannot bring claims against Dallas County Jail directly because it is not a jural entity that can be sued.  *Dale v. Officer Bridges*, No. 3:96-CV-3088-AH, 1997 WL 810033, at *1 n.1 (N.D. Tex. Dec. 22, 1997), *aff'd*, 154 F.3d 416 (5th Cir. 1998).  To the extent that Plaintiff alleges any claims against the Dallas County Jail, such claims are subject to dismissal for failure to state a claim.

capacity are immune from suits for damages in federal court.").  Nevertheless, Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72-76 (2000), or, the State may waive its immunity by consenting to suit. *AT&T Communications v. BellSouth Telecommunications Inc.,* 238 F.3d 636, 643 (5th Cir. 2001). "Additionally, the Supreme Court has for nearly a century allowed suits against state officials for prospective injunctive relief to end a continuing violation of federal law under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)." *AT&T Communications,* 238 F.3d at 643.

Defendants Moody and Bowers provide briefing on the legal principles governing the applicability of Eleventh Amendment immunity but do not refer the Court to evidence that shows the Eleventh Amendment bars Plaintiff's official capacity claims against them.  (MSJ Br. at 15). Nonetheless, the Court has reviewed the evidence submitted by all parties to determine if it conclusively establishes Defendants Moody and Bowers are employees of the state or a state agency protected by Eleventh Amendment immunity.  *See Segura v. Texas Dep't of Human Servs.*, No. Civ.A.SA00CA02290G, 2001 WL 681748, at *7 n.67 (W.D. Tex. Feb. 14, 2001) (holding that individually named defendants sued in their official capacities were protected by Eleventh Amendment immunity because the record established they were employees of a state agency).

Plaintiff's complaint and responses to the Magistrate Judge's Questionnaire indicates he sues several individually named defendants, who were medical staff employees at the Dallas County Jail.[18]  (Am. Compl. at 3; MJQ at 4).  Defendants' exhibit 3 contains an authorization to release

---

[18]  Employees of Dallas County are not protected by Eleventh Amendment immunity.  *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (holding that the bar of the Eleventh Amendment to suit in federal courts does not extend to counties).

Plaintiff's medical records to his medical provider, the University of Texas Medical Branch at Galveston ("UTMB").[19] (Defs. Joint App. in Support of MSJ at 9). Several of the medical records included in Defendants' exhibit 3 are titled "UTMB Correctional Managed Care, Clinic Note - Provider"and contain entries electronically signed by Defendant Moody. (*See e.g.*, Defs. Joint App. in Support of MSJ at 11, 13, 16, 19, 22, 24, 25, 29, 30, 32, 35, 36, 40, 41, 42, 44, 45, 46, 49, 51, 55, 56, 58, 62, 66-68). While this evidence may inferentially show that at least Defendant Moody was employed by UTMB, the Court cannot draw such inference in favor of Defendants. *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 479 (5th Cir. 2001) (noting that when deciding a motion for summary judgments all inferences are drawn in favor of the nonmovant). The summary judgment evidence does not establish that Defendants Moody and Bowers were employees of UTMB. Defendants Moody and Bowers have not carried their burden to show that there is no genuine issue of material fact and that Plaintiff's official capacity claims against them are barred by Eleventh Amendment immunity. *See Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-1023 (5th Cir. 1995) (noting that the moving party must establish the absence of genuine issues of material fact before it can prevail on a motion for summary judgment); *see also Antonelli v. New Jersey* 310 F. Supp. 2d 700, 712 (D. N.J. 2004) (holding that defendants bear the burden of proving they are entitled to sovereign immunity) (citing *Chisolm v. McManimon*, 275 F.3d 315, 323 (3rd Cir. 2001). The Court must therefore recommend that Defendants Moody and Bowers' motion for summary judgment on this ground be denied. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (noting that a motion for summary judgment must be denied if moving party fails to meet its initial

---

[19] UTMB is protected from suit by sovereign immunity under the Eleventh Amendment to the United States Constitution. *See Sampson v. United States*, 73 Fed. App'x 48, 49 (5th Cir. 2003) (per curiam) (recognizing that the University of Texas Medical Branch "is immune from suit under the Eleventh Amendment").

burden).

**B.**     **Non-Cognizable Claim**

Plaintiff complains that Defendant Moody committed medical malpractice by prescribing diabetic medication when he is not a diabetic. (MJQ at 4). Defendant Moody moves for summary judgment on this claim on the grounds that Plaintiff cannot show a constitutional violation. (MSJ Br. at 8).

It is well established that negligent or erroneous medical treatment does not provide a basis for a § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322- 23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice more appropriately addressed under state law. *See Estelle v. Gamble*, 429 U.S. 97, 107-08 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Plaintiff specifically labels his allegation regarding Defendant Moody's decision to treat him with anti-diabetic medication as a "medical malpractice claim." (MJQ at 4). However, Plaintiff's allegation of medical malpractice against Defendant Moody does not state a constitutional violation, and is not cognizable under § 1983. *See Williams v. Thomas*, 169 Fed. Appx. 285, 286 (5th Cir. 2006) ("unsuccessful medical treatment, acts of negligence or medical malpractice, or a prisoner's disagreement with prison officials regarding medical treatment are insufficient to establish an unconstitutional denial of medical care"). Accordingly, the Court recommends that the motion for

summary judgment be granted on this claim.[20]

## C. __Absence of evidence__

Defendants point to the absence of evidence to support Plaintiff's claims of sexual assault and a supervisor's liability. (*See* MSJ at 14; MSB Br. at 14). Because Defendants do not have the burden of proof at trial, they can move for summary judgment on the grounds there is no evidence to support Plaintiff's claims. *Sanders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991). To defeat the motion for summary judgment, Plaintiff must direct the Court to facts that support all the essential elements of his claims. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). "[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate." *Id.* (citing *Celotex*, 477 U.S. at 322-23).

### 1. *Sexual Assault by Officer Prater*

Plaintiff alleges that Officer Prater sexually assaulted him in the handicap shower on December 16, 2004, and seeks his arrest for the assault.[21] (*See* Am. Compl. at 4). Officer Prater moves for summary judgment on the grounds that there is no evidence he touched Plaintiff in a sexually inappropriate manner. (*See* MSJ at 14).

In his declaration submitted with his evidence opposing Defendants' motion for summary judgment, Plaintiff admits that he "cannot prove this accusation," and "has no physical evidence of the incident." (Plaintiff's Decl. at 26-27). Because Plaintiff concedes that he cannot point to

---

[20] The Court notes that Plaintiff appears to have abandoned this claim. Specifically, he provides a "Declaration in Opposition to Defendants' Motion for Summary Judgment" wherein he "admits he is diabetic and in regards to that Defendant Linda Moody acted in good faith." (*See* Plaintiff's Decl. at 7).

[21] Such relief is not available in a suit under § 1983. *See Carey v. Piphus*, 435 U.S. 247, 255-259 (1978) (holding that compensatory damages should be awarded for violations of constitutional rights under § 1983); *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding an inmate has no constitutional right to have someone criminally prosecuted).

evidence in the record sufficient to create a genuine issue of material fact, the Court finds that Officer Prater is entitled to summary judgment on this claim.

### 2. *Failure to Train and Supervise by Bowers*

Plaintiff sues Defendant Bowers, individually, based on his position as Medical Director at the Dallas County Jail at the time that Plaintiff was incarcerated. (*See* MJQ at 5; Plaintiff's Decl. at 19-26). The crux of Plaintiff's claim against Defendant Bowers is based on his duty to supervise and train the medical staff. (*See* Plaintiff's Rule 7(a) Reply at 1-6). Defendant Bowers moves for summary judgment on the grounds that Plaintiff cannot demonstrate any causal link between Defendant Bower's training and/or supervision of Defendant Moody and a violation of his constitutional rights. (*See* MSJ Br. at 10-11).

In order to prevail against a supervisor under 42 U.S.C. § 1983, the plaintiff must show that (1) the supervisor's conduct directly caused a constitutional violation, or (2) the supervisor was "deliberately indifferent" to a violation of a constitutional right. *Breaux v. City of Garland,* 205 F.3d 150, 161 (5th Cir. 2000). There must be some showing of personal involvement by a particular individual defendant to prevail against such individual.[22] *Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 314 (5th Cir. 1999); *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). Furthermore, to establish liability under § 1983 on a failure to train claim, "the plaintiff must show that (1) [the supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure

---

[22] It is well established that § 1983 provides no means to hold "supervisory officials ... liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987)); *accord Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 314 (5th Cir. 1999) (holding that the acts of a subordinate "trigger no individual § 1983 liability").

to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005).

Defendant Bowers argues Plaintiff cannot establish the causal link between a failure to train/supervise and a violation of a constitutional right because Defendant Moody did not violate Plaintiff's constitutional rights. (MSJ Br. at 11). Defendant Bowers relies on the evidence that shows Defendant Moody consistently and extensively treated Plaintiff's recurrent leg infections and repeatedly requested Plaintiff be transferred to Parkland when the infections worsened. (*See* MSJ Br. at 11; Defs. Joint App. in Support of MSJ at 13, 14, 18-19, 20, 25, 28-29, 33, 37-38, 39-40, 47-48, 49).

Plaintiff relies solely on his declaration to show that Defendant Bowers allowed Dallas County Jail Staff and Defendant Moody to: deny him or delay his access to adequate medical attention; deny him or delay his transfer to Parkland; disregard Plaintiff's health and safety; deprive him of his wheelchair; and deprive him of adequate sanitation. (*See* Plaintiff's Decl. at 19-26). Plaintiff argues that "Defendant Bowers as a Medical Director cannot accurately close his eyes and say he was'nt [sic] aware of the Plaintiff being exposed to cruel and unusual Punishment. By the many hospitalizations alone, it would have been clear to any competent person, that staff werent [sic] meeting the needs of the Plaintiff at the Jail." (*See* Plaintiff's Rule 7(a) Reply at 4; *see also* Plaintiff's Decl. at 19-26). Simply, Plaintiff contends that the Court should impute awareness based on Defendant Bower's position as Medical Director.

"[C]ourts are reluctant to impute knowledge to supervisory or policy-making officials, and absent imputed knowledge, courts cannot find deliberate indifference." *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 987 (E.D. Tex. 2005). Courts have consistently held that knowledge may be

imputed to a supervisory official only in those cases where there is evidence of a history of widespread abuse, "and even then only when there is a causal connection between the failure to supervise or train and the constitutional violation, and the failure to supervise or train amounts to deliberate indifference." *See Batiste v. City of Beaumont*, 421 F. Supp. 2d 1000, 1006 (E.D. Tex. 2006); *see also Edwards v. Harris County Sheriff's Dep't*, 864 F. Supp. 633, 635 (S.D. Tex. 1994); *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982). Plaintiff's allegations of failure to supervise/train relate specifically and solely to his medical treatment—not a history of widespread abuses.[23] Plaintiff has pointed to no evidence that shows there is a causal connection between the failure to supervise or train and the constitutional violation, and that the failure to train amounts to deliberate indifference. Since there is no evidence that Defendant Bowers was actually aware that there were any constitutional violations involving denial or delay in providing Plaintiff with medical care, it cannot be said that he exhibited deliberate indifference to the serious medical needs of Plaintiff.

Accordingly, the Court finds that Defendant Bowers, in his individual capacity, is entitled to summary judgment on Plaintiff's claims regarding failure to supervise or train the Dallas County Jail medical staff.

### 3. *Denial of Medication by Bowers*

Plaintiff also complains that Defendant Bowers refused to give him proper pain medications as prescribed by physicians at Parkland. (*See* MJQ at 5). Defendant Bowers moves for summary judgment on the grounds that there is no evidence he was personally involved in any deprivations

---

[23] To the extent that Plaintiff relies on his exhibit containing articles from the Dallas Morning News to show some sort of history of widespread constitutional violations, the newspaper articles are not competent summary judgment evidence and cannot be considered. *Roberts*, 397 F.3d at 295 (finding that newspaper articles were "classic, inadmissible hearsay").

of medical care.  (*See* MSJ Br. at 10-11).  He points to Plaintiff's admission that Defendant Bowers did not personally participate in the alleged denial of medical care to support his argument that there is no evidence that he refused to administer medications prescribed by Parkland.  (*See* MSJ Br. at 10; Plaintiff's Rule 7(a) Reply at 2; Plaintiff's Decl. at 19).

Under certain circumstances, allegations of deliberate indifference may be shown when prison officials deny an inmate recommended treatment by medical professionals.  *Payne v. Lynaugh*, 843 F.2d 177*,* 178 (5th Cir. 1988) (citing *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir.1981)).  *See, e.g., Walker v. Dallas County Sheriff's Med. Dep't*, No. 3-02-CV-1546-P, 2002 WL 31553930, at *2 (N.D. Tex. Nov. 13, 2002); *see also Gordon v. Pettiford*, No. 5:04cv224-DCB-JCS, 2007 WL 679592, at *6 (S.D. Miss. March 1, 2007) (stating that Eighth Amendment includes right to be free of intentional interference with prescribed medical treatment).  However, as discussed above, in the context of a § 1983 claim, there must be some showing of personal involvement by a particular individual defendant in order to prevail against such individual.  *Champagne*, 188 F.3d at 314; *Thompson*, 709 F.2d at 382.

Plaintiff fails to point to any evidence raising a genuine issue of material fact regarding Defendant Bowers' personal involvement in the denial of any prescribed medications.  Instead, Plaintiff's own evidence establishes that Defendant Bowers was not personally involved in the alleged denial of medical care.  (*See* Plaintiff's Decl. at 19-26; *see also* Plaintiff's Rule 7(a) Reply at 2).  Accordingly, Defendant Bowers is entitled to summary judgment on Plaintiff's claims in an individual capacity alleging a denial of medical care.

## D.    Qualified Immunity

Both the State and Dallas County Defendants assert that they are entitled to summary judgment on the basis of qualified immunity on Plaintiff's claims against them in their individual capacities for denial/delay of proper medical care and unsanitary conditions.[24]  (*See* MSJ Br. at 7-14, 22).  They argue that Plaintiff has not alleged a constitutional violation because he cannot show that Defendants were deliberately indifferent to his serious medical needs or that they were aware of unsanitary conditions at the Dallas County Jail that were likely to cause an infection or pose a serious risk to Plaintiff's health.  (MSJ Br. at 7, 12, 22).

A governmental employee who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *White*, 959 F.3d at 544.  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

---

[24]  Plaintiff appears to assert his allegations regarding wheelchair deprivation against Defendants Moody, Bowers, Prater, Porter, and Chapa for the first time in his response to these Defendants' motions for summary judgment.  (*See* Plaintiff's Br. in Opposition to MSJ at 2, 4; Plaintiff's Decl. at 1, 12, 20, 24, 32-35).  In his complaint, Plaintiff specifically alleged this claim against only Defendant Jackson (who has not been served or answered the suit).  (*See* Am. Compl. at 3; MJQ at 3).  To the extent that Plaintiff attempts to assert this claim against Defendants Moody, Bowers, Prater, Porter, and Chapa via his response to their motions for summary judgment, such an attempt is improper.  *See Ketcher v. Wal-Mart Stores, Inc.*, 122 F. Supp. 2d 747, 756 (S.D. Tex. 2000) (noting that Plaintiff could not assert new claims, without leave of court, after defendants filed a responsive pleading).  Thus, the Court does not address Plaintiff's claim regarding a violation of his civil rights based on the deprivation of his wheelchair at this time.

Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *White*, 959 F.3d at 544.

To determine whether Defendants are entitled to qualified immunity, the threshold question is whether, on the facts alleged by Plaintiff, a clearly established constitutional right would have been violated. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Assuming the facts alleged by Plaintiff are true, if Defendants did not violate a constitutional right, the Court need inquire no further. *Id.* at 201. If Plaintiff can show that his constitutional rights were violated, the Court must then determine whether Defendants' conduct was objectively reasonable in light of clearly established law at the time of the challenged conduct. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the "conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

## 1. <u>Constitutional Violation</u>

Plaintiff's complaint primarily alleges that Defendants violated his constitutional rights by denying or delaying adequate medical care and subjecting him to unsanitary conditions that endangered his health. (MJQ at 3-6; *see also* Plaintiff's Br. in Opposition to MSJ at 1). Plaintiff argues that his claims derive from the protections of the Eighth Amendment to the United States Constitution. (*See* Plaintiff's Br. in Opposition to MSJ at 1).

The Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The prohibition "is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment." *Robinson v. California*, 370

U.S. 660, 675 (1962). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). In providing "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.*

In this case, it appears that Plaintiff was both a pretrial detainee and a convicted prisoner while he was incarcerated at the Dallas County Jail on charges of aggravated robbery and a parole violation. (*See* MJQ at 7). Constitutional rights related to conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment" for a pretrial detainee, and from the prohibition against cruel and unusual punishment contained within the Eighth Amendment for convicted prisoners. *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish,* 441 U.S. 520, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)). The Court therefore also details the test applicable to claims brought by pretrial detainees.

Courts apply different tests when "analyzing constitutional challenges by pretrial detainees" depending upon whether the challenge is classified "as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (*en banc*) (quoting *Hare,* 74 F.3d at 644). A challenge constitutes an attack on conditions of confinement when the detainee attacks "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* (quoting *Hare,* 74 F.3d at 644). Challenges to general conditions of confinement require application of "the reasonable relationship test of *Bell v. Wolfish,* 441 U.S. 520, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979)." *Id.* Under that test, "a constitutional violation exists only if [the

court finds] that the condition of confinement is not reasonably related to a legitimate, non-punitive governmental objective." *Id.* If the complained-of harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. *See Hare,* 74 F.3d at 645. To prove a violation of his constitutional rights in an episodic act or omission case, the detainee must establish that the official(s) acted with subjective deliberate indifference as established in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *Flores v. County of Hardeman, Tex.,* 124 F.3d 736, 738 (5th Cir. 1997) (citing *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir. 1997) (en banc)).

Here, Plaintiff's complaint alleges that Defendant Moody failed to provide medical care and delayed in transferring him to Parkland where they could properly address his serious medical needs. (*See* MJQ at 4-5). This specific complaint does not attack rules or conditions of the Dallas County Jail, but rather concerns the acts or omissions of an individual to render him proper medical care. Thus, Plaintiff's denial/delay of medical care against Defendant Moody should be analyzed under the "episodic act or omission" standard. *Stevenson v. Anderson*, N. 3:00-CV-2157-M, 2002 WL 432889, at *3 n.8, N.D. Tex. Mar. 18, 2002) (holding that plaintiff's claim that defendants denied him medical care was an "episodic" claim while claim that he was denied sanitary showers was a "jail condition" claim).

In contrast, Plaintiff complains that both the State Defendants and the Dallas County Defendants are responsible for forcing him to endure the unsanitary conditions of the medical floor and the handicap shower. (MJQ at 5). This complaint is a "conditions" claim that is subject reasonable-relationship test established in *Bell*. *See Lee v. Hennigan*, 98 Fed. Appx. 286, 288 (5th Cir. 2004) (construing allegations that defendants violated pre-trial detainee's constitutional rights by maintaining unsafe shower facilities as a "condition-of-confinement" claim); *see also Stevenson*,

2002 WL 432889, at *3 n.8 (same).  Because Plaintiff brings both a "jail condition" claim and an

"episodic" claim, the Court should apply both the reasonable relationship test of *Bell* and the

deliberate indifference standard of *Farmer*.  Despite the practice of differentiating between these two

tests, "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to'

the deliberate indifference standard employed in episodic cases." *Scott,* 114 F.3d at 54 (citing *Hare*,

74 F.3d at 643).  Thus, the *Farmer* deliberate indifference standard is the appropriate standard for

all denial of medical care claims under the Eighth and Fourteenth Amendments.  *Hare*, 74 F.3d at

645.

### a.    *Denial of medical care by Moody*

Plaintiff contends that Defendant Moody violated his rights to be free of cruel and unusual

punishment by her deliberate indifference to his serious and recurrent leg infections in either

denying him medical treatment or delaying his transfer to Parkland for appropriate medical care.

(*See* MJQ at 4-5; *see also* Plaintiff's Br. in Opposition to MSJ at 10-14).  Defendant Moody argues

that summary judgment is appropriate because the evidence shows she promptly treated Plaintiff's

myriad of medical problems.  (*See* MSJ Br. at 7).

As discussed above, prison officials are not "liable under the Eighth Amendment for denying

an inmate humane conditions of confinement unless the official knows of and disregards an

excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  In *Farmer*, the Supreme Court

held

> that a prison official cannot be found liable under the Eighth Amendment for denying
> an inmate humane conditions of confinement unless the official knows of and
> disregards an excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a substantial risk of
> serious harm exists, and he must also draw the inference.

*Id.*. *Farmer* also set out a two-part test for determining whether a prison official has violated the Constitution. *Id.* at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (citations omitted). The second prong of the test "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates'" constitutional concerns. *Id.* (citation omitted). The "prison official must have a 'sufficiently culpable state of mind.'" *Id.* (citation omitted). Simply, to establish liability under this standard, a pretrial detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious . . . harm and that injuries resulted." *Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000).

### (1) *Sufficiently Serious*

The Fifth Circuit has held that whether a defendant is aware of a serious risk of substantial harm can be determined from the nature of the harm. *See Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) (holding that defendant was aware of the risk of substantial harm based on the nature of the wound on plaintiff's leg that had become infected). The evidence establishes that Defendant Moody was aware that Plaintiff's recurrent leg infections were serious medical needs that could result in loss of his leg, or even death. (*See* Defs. Joint App. in Support of MSJ at 31-32).

### (2) *Deliberate Indifference*

To show that she provided proper and adequate medical care, Defendant Moody relies on evidence that shows that Plaintiff received extensive treatment for his lower leg infections at the Dallas County Jail, she requested non-formulary medications for Plaintiff, conferred with medical staff at Parkland to determine the best antibiotic treatment for Plaintiff's recurring infections, ensured that Plaintiff had access to his wheelchair, and explored reasons why Plaintiff would refuse

any medication.  (*See* MSJ Br. at 8; *see also* Defs. Joint App. in Support of MSJ at 13, 14, 18-19, 20, 25, 28-29, 33, 37-38, 39-40, 47-48, 49).  Further, Defendant Moody relies on the affidavit of Dr. C. Glen Mayhall, M.D., who reviewed the medical records of Plaintiff's treatment by Defendant Moody and by Parkland medical staff, and opines that Plaintiff received excellent medical care addressing his infections at the Dallas County Jail infirmary and at Parkland.  (*See* Defs. Joint App. in Support of MSJ at 7).

The Fifth Circuit has consistently held that medical records showing an inmate was examined by medical personnel may rebut allegations of deliberate indifference to serious medical needs. *Gobert*, 465 F.3d at 347 n.24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993); *Bejaran v. Cruz*, 79 Fed. Appx. 73, 74 (5th Cir. 2003)).  Apart from his conclusory assertions that Defendant Moody denied him treatment, Plaintiff offers no evidence that shows he was actually denied treatment.  (*See* Plaintiff's Decl. at 7, 8).  "Conclusory statements are not competent evidence to defeat summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).  Thus, Plaintiff has failed to bring forth evidence raising any genuine issue of material fact on his claim that Defendant Moody failed to provide medical care for his serious medical needs.

Because Plaintiff has not shown or identified a genuine issue of material fact concerning whether Defendant Moody violated a clearly established constitutional right, she is protected by qualified immunity and entitled to summary judgment on this claim.  *See Saucier*, 533 U.S. at 201.

### b.  *Delay in medical care by Moody*

With regard to Plaintiff's complaint that she deliberately ignored his serious[25] medical needs by delaying transfers to Parkland, Defendant Moody points to evidence that shows that she ordered or otherwise arranged for Plaintiff's transfer to Parkland on several occasions: April 13, 2004, August 4, 2004, August 23, 2004, September 1, 2004, October 28, 2004, and February 7, 2005.  (*See* Defs. Joint App. in Support of MSJ at 15-16, 31-32, 43-44, 45-46, 50-51).  Plaintiff argues that the same evidence shows that he suffered with serious infections in his lower left leg for weeks prior to being transferred to Parkland and the delay resulted in several surgeries, pain and suffering, as well as disfigurement.  (*See* Plaintiff's Br. in Opposition to MSJ at 10-11; *see also* Plaintiff's App. in Opposition to MSJ at 37, 38, 39, 42, 50-51; Plaintiff's Decl. at 2).  Plaintiff's evidence establishes that he underwent three surgeries to drain the abscesses and debridement of the infected area on his lower left leg.  (*See* Plaintiff's App. in Opposition to MSJ at 37, 40, 51).  Further, Plaintiff's evidence shows that the multiple infections in his lower left leg had persisted for two to three weeks before he was taken to Parkland for medical treatment.  (*See* Plaintiff's App. in Opposition to MSJ at 37, 38, 39, 42, 50).

For a delay in medical care to constitute an Eighth Amendment violation, the delay must result in substantial harm, *i.e.* lasting complications.  *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).  While Defendant Moody presents evidence that shows she provided Plaintiff with extensive medical treatment for his lower leg infections, she provides no evidence that addresses Plaintiff's claim that the delay in transferring

---

[25]  As previously discussed, the evidence establishes Defendant Moody was aware of the seriousness of Plaintiff's infections.  (*See* Defs. Joint App. in Support of MSJ at 31-32).

him to Parkland caused him to suffer for weeks, and caused his conditions to worsen requiring surgery and debridement and permanent disfigurement. If proven, Plaintiff's allegations could demonstrate deliberate indifference on the part of Defendant Moody. *See Lentworth v. Potter*, 2006 WL 1975199, at *5 (N.D. Tex. Jul. 14, 2006) (noting that allegations of delay in medical treatment until an infection worsened could arguably demonstrate deliberate indifference). Accordingly, the trier of fact could find that Defendant Moody violated Plaintiff's constitutional rights by delaying his transfers to Parkland to obtain medical care. For these reasons, Plaintiff has raised genuine issues of material fact that make summary judgment inappropriate at this stage of the qualified immunity analysis, and the Court must proceed to consider whether Defendants' conduct was objectively reasonable in light of clearly established law at the time of the challenged conduct. *Saucier,* 533 U.S. at 201; *Glenn*, 242 F.3d at 312.

### c.    *Unsanitary Conditions by all Defendants*[26]

Plaintiff's complaint alleges that each of the Defendants violated his constitutional rights by subjecting him to unsanitary living conditions that caused his multiple leg infections. (*See* Am. Compl. at 3; MJQ at 5). The Dallas County Defendants argue that summary judgment is proper on this claim because there is no evidence to show that they were aware of any unsanitary conditions at the Dallas County Jail that posed a serious risk to Plaintiff's health or that were likely to cause an infection. Further, the Dallas County Defendants argue that there is no evidence that they

---

[26]  Defendants Moody and Bowers do not move for summary judgment on Plaintiff's claims against them regarding unsanitary conditions. Because they do not address Plaintiff's condition of confinement claim in their motion, it would be error to grant summary judgment for them on a ground not raised. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford,* 809 F.2d 1190, 1192 (5th Cir.1987); *see also John v. State of La. (Bd. of Trustees for State Colls. & Univs.,* 757 F.2d 698, 708 (5th Cir. 1985) (holding that Rule 56 contemplates shifting burden, nonmovant is under no obligation to respond unless movant discharges initial burden, and if moving party fails to discharge this burden, summary judgment must be denied, even if nonmoving party has not responded to motion).

engaged in any conduct that was likely to cause Plaintiff an infection or cause a serious risk to his health.  (MSJ Br. at 14-15).

As discussed above, the *Bell* reasonable relationship test is the appropriate standard for evaluating the "jail condition" claims of pretrial detainees under the Fourteenth Amendment, and the *Farmer* deliberate indifference standard is applied to "jail condition" claims of convicted prisoners under the Eighth Amendment.  *Stevenson*, 2002 WL 432889, at *5.  Further, notwithstanding the distinction of the applicability of these two tests to claims of pretrial detainees versus convicted prisoners, the Fifth Circuit has consistently held that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases."  *Scott*, 114 F.3d at 54 (citing *Hare*, 74 F.3d at 643).  Accordingly, to establish that Defendants violated his civil rights by subjecting him to unsanitary living conditions, Plaintiff must show that (1) Defendants had subjective knowledge of a substantial risk of serious harm to Plaintiff, and (2) they responded with deliberate indifference.  *Smith v. Dallas County Jail System*, No. 3:07-CV-0278-B, 2007 WL 1149215, at *2 (N.D. Tex. Apr. 16, 2007).

### (1)       Sufficiently Serious

 "[P]rison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation."  *Reed v. Dallas County Sheriff's Dept.*, No. 3:03-CV-2166-R, 2004 WL 2187104, at *4 (N.D. Tex. Sept. 28, 2004) (citing *Sanford v. Brookshire*, 879 F. Supp. 691, 693 (W.D. Tex. 1994)).  Filthy cell conditions may constitute an Eighth Amendment violation.  *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (citing *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)).  Other circuits have made similar holdings; the Eighth Circuit has held that a prisoner being placed in a cell covered with filth and human waste for a two-year

period without proper cleaning supplies constitutes cruel and unusual punishment. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) ("[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time."). *See also McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (holding that three days in a feces-covered cell states a claim upon which relief could be granted).

In support of their motion for summary judgment, the Dallas County Defendants provide the affidavits of Officer Prater, Officer Porter, and Officer Chapa, who each individually aver that they were unaware of any unsanitary conditions that were likely to cause an infection or constitute a serious risk to Plaintiff's health. (*See* Defs. Joint App. in Support of MSJ at 89, 91, 93). In rebuttal, Plaintiff submits his own sworn declaration along with the declarations of Ronald Stribling and Vandrick Jones.[27] (*See generally*, Plaintiff's Decl.; Plaintiff's App. in Opposition to MSJ at 1, 7).

In his declaration, Plaintiff states that each time he was escorted to the handicap shower by one of the Dallas County Defendants, he witnessed:

"(1) Contaminated clothing on the floor with either blood, or feces, or both smeared on it.

(2) Blood, Feces, or other waste on the Floor

---

[27] Plaintiff also relies excerpts from various Dallas Morning News articles. (*See* Plaintiff's App. in Opposition at 25-36). Although Defendants do not object to Plaintiff's submission of the newspaper articles, the Court will not consider them in deciding the motion for summary judgment. Evidence in support of or opposition of summary judgment may be considered to the extent it is not based on hearsay. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir.1995); *see also Okoye v. University of Texas Houston Health Science Center,* 245 F.3d 507, 510 n. 5 (5th Cir. 2001) (opining that statements based on hearsay do not make competent summary judgment evidence). Newspaper articles are a classic example of inadmissible hearsay. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). In the present case, the Court finds that the particular newspaper article cited is inadmissible hearsay because it is offered to prove that the Dallas County Defendants were aware of the unsanitary conditions at the Dallas County Jail and that such conditions posed a substantial risk of harm to the health and welfare of inmates. (*See* Plaintiff's Br. in Opposition to MSJ at 22-23). Thus, any statements made or alluded to in the article cannot be considered as evidence to defeat Defendants' motion for summary judgment. *See McClure v. Mexia Independent School Dist.,* 750 F.2d 396, 401 (5th Cir. 1985); *Dallas County v. Commercial Union Assur. Co.,* 286 F.2d 388, 392 (5th Cir. 1961) (stating that newspaper articles are often inadmissible hearsay).

(3) Blood and/or Fece's [sic] on the chair located inside the shower.

(4) Water overflowed all other the floor with a stopped up drain

(5) Used Urine Bags lying on the floor or inside the shower area.

(6) Colostomy Bags opened and exposed on the floor, and/or inside the shower area

(7) NO Trash bag or Trash Can available for Regular Trash, or Medical Waste."

(*See* Plaintiff's Decl. at 29-30). Further, Plaintiff avers that he requested cleaning supplies from Officers Prater, Porter, and Chapa on multiple occasions, but they refused to provide him with anything. (*Id.* at 28-29). Ronald Stribling, a TDCJ-inmate who was incarcerated at the Dallas County Jail on or about 2004 through 2005, also testifies that he is a wheelchair-bound individual, and that every time he was escorted to the handicapped shower by one of the Dallas County Defendants, he observed "urine bags open and exposed on the floor, or (chair that we use in the shower,) [sic] feces on the floor, or chair, blood on the floor or chair, overflowing water all over the floor, other inmates contaminated clothing left in the shower area, colostomy bags (for feces), open and exposed on the floor, or the chair[,] feces floating on the floor etc." (*See* Plaintiff's App. in Opposition to MSJ at 1-2). Mr. Stribling further states that the Dallas County Defendants refused his requests for cleaning supplies and informed him that he was to use the handicap shower as is or return to his cell without taking a shower. (*Id.* at 2). Similarly, Vandrick Jones, another inmate who was incarcerated at the Dallas County Jail on or about 2004 through 2005, provides an affidavit in which he states that he "personally witnessed and observed the poor sanitation of the handicap shower area." (*Id.* at 8). Specifically, Mr. Jones states "[u]pon entering the handicap shower on many occasions, I've witnessed and observed at different times, blood on the floor, or on the shower chair, colostomy bags, urine bags, on the floor, all of which are opened and exposed, contaminated

clothing with either urine feces, or blood, at last, water over-flowed and spreading contaminating agents all over the floor, which makes contact with the wheelchair and in turn makes contact with our hands." (*Id.* at 9).

Forcing a prisoner to shower in an area covered with blood and excrement falls within the scope of conditions that Courts have found sufficiently serious to raise a constitutional violation. *Gates*, 376 F.3d at 338 (holding that cells "with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" violated the Eighth Amendment's proscription against cruel and unusual punishment). Such conditions, if proved, could constitute a substantial risk of serious harm to inmates, especially those handicapped like Plaintiff. Thus, Plaintiff has shown there are genuine issues of material fact regarding whether the unsanitary conditions of the medical floor and handicapped shower existed and whether they were sufficiently serious to cause Plaintiff to endure multiple infections and hospitalization.

### (2)     Deliberate Indifference

To establish that Defendants possessed the requisite state of mind, Plaintiff must show that Defendants were deliberately indifferent to Plaintiff's health or safety, meaning that Defendants subjectively knew of and disregarded a substantial risk to the prisoner's health or safety. *See Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004); *Farmer*, 511 U.S. at 837. A violation may be found under a conditions of confinement theory only if jail officials knew the jail's conditions created a constitutional violation *or* if they intended to force Plaintiff to endure such conditions. *See Ortega v. Rowe*, 796 F.2d 765, 768 (5th Cir. 1986). Evidence indicating that unsanitary conditions were not atypical and were easily observed may be sufficient to establish deliberate indifference. *See, e.g., Gates*, 376 F.3d at 338.

The Dallas County Defendants rely on *Ortega v. Rowe* to argue that to succeed on his conditions of confinement claim, Plaintiff must show not only that these conditions existed, but also that they were implemented or maintained by officials with the intent of punishing prisoners. (Reply at 5). Even under *Ortega*'s holding, however, the Dallas County Defendants have not shown that there are no genuine issues of material fact. In *Ortega*, the Fifth Circuit found that jail officials lacked any intent to punish inmates because the evidence showed "those agents and officials corrected shortcomings in jail conditions when they learned of any deficiency" by providing blankets and cleaning up the cells. *Ortega*, 796 F.2d at 768. The Dallas County Defendants do not point to evidence that shows they attempted to remedy the conditions of which Plaintiff and other inmates complained. Instead, they contend that they were unaware that any unsanitary conditions existed at the Dallas County Jail. (Reply at 5).

Plaintiff's evidence in the form of his own declaration, as well as those of Ronald Stribling and Vandrick Jones contradicts these assertions. (*See* Plaintiff's Decl. at 28-32, Plaintiff's App. in Opposition to MSJ at 1-3, 7-9). Specifically, Ronald Stribling and Vandrick Jones corroborate Plaintiff's description of the handicapped shower's typical condition as well as the Dallas County Defendants' knowledge of the shower's typical condition. (*Id.*). Plaintiff, Stribling, and Jones describe the handicapped shower: contaminated clothing on the floor, blood on the floor/chair, open and exposed colostomy and/or urine bags on the floor, with water spreading the contaminants. (*Id.*). They also contend that Defendants Officers Prater, Porter, and Chapa escorted handicapped prisoners to the shower and fielded frequent complaints about the shower's condition, yet did nothing. (*Id.*). Given the Fifth Circuit's teachings that ignoring easily observable unsanitary conditions can establish deliberate indifference to a substantial risk of harm, *Gates*, 376 F.3d at 338,

Plaintiff has provided evidence to demonstrate a genuine issue of material fact as to whether the unsanitary conditions were easily observable.

In sum, the Dallas County Defendants aver they were unaware of any unsanitary conditions while Plaintiff, Jones, and Stribling aver that the conditions were deplorable and easily observable to each of the Officers every time they escorted the prisoners to the handicap shower. Credibility choices between conflicting versions of events are matters for a jury to resolve and cannot be resolved by the Court on summary judgment. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (holding that in light of "several diametrically opposed summary judgment affidavits" on the issue of probable cause, qualified immunity turned on fact issues that "must be resolved by further proceedings in trial court"). Accordingly, the Court cannot determine at this juncture whether Officer Prater, Officer Porter, and Officer Chapa were deliberately indifferent to conditions of confinement that posed a substantial risk to Plaintiff's health or safety, and the Court must proceed to the second step of the qualified immunity analysis.

### 2. **Objective Reasonableness**

Having established genuine issues of material fact regarding whether Defendant Moody violated his rights in delaying his transfers to Parkland for medical treatment of his recurrent leg infections and whether the State Defendants and Dallas County Defendants violated his constitutional rights by subjecting him to unsanitary living conditions, Plaintiff, must, under the second step of the qualified immunity analysis show that Defendants' conduct was objectively unreasonable in light of clearly established federal law at the time of the incident. *See Saucier*, 533 U.S. at 201. The inquiry into whether Defendants' actions were objectively unreasonable is whether a reasonable official had fair warning that the policies and practices in place at the Dallas County

Jail violated an inmate's constitutional right to adequate medical care. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004).

Plaintiff was incarcerated at the Dallas County Jail from approximately November 17, 2003 to April 11, 2005. At that time, federal law was clearly established that a pretrial detainee, as well as a convicted prisoner, is guaranteed humane conditions of confinement (including adequate medical care and sanitation) as part of his Fourteenth and Eighth Amendment rights. *Bell*, 441 U.S. at 536-37; *Estelle*, 429 U.S. at 104; *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *see also Gates*, 376 F.3d at 338; *Sanford*, 879 F. Supp. at 693.

### a. *Delay in medical care by Moody*

Defendant Moody relies on the same evidence introduced to show that she was not deliberately indifferent to Plaintiff's serious medical needs and argues that such evidence shows her conduct was objectively reasonable. (*See* MSJ Br. at 12-14; *see also* Defs. Joint App. in Support of MSJ at 1-7). As previously discussed, Defendant Moody's evidence does not address Plaintiff's claim that the delays in transferring him to Parkland caused his leg infections to worsen, pain and suffering, surgeries, debridement, and disfigurement. (*See* Plaintiff's Decl. at 7-11). Plaintiff's evidence establishes that on several occasions he suffered from a serious leg infection for two to three weeks before being admitted to Parkland; he underwent surgery and debridement three times; and that he has resulting disfigurement. (*See* Plaintiff's Decl. at 2; Plaintiff's App. in Opposition to MSJ at 37, 38, 29, 40, 42, 50, 51). This evidence creates a fact issue on whether a reasonable person would have transferred Plaintiff to Parkland for medical treatment in a more timely manner. Thus, Defendant Moody's conduct cannot be deemed objectively reasonable in light of well-established federal law that depriving Plaintiff of adequate medical care was a violation of his

constitutional rights. Defendant Moody is therefore not entitled to summary judgment on Plaintiff's claim of delay of proper medical care.

### b. *Unsanitary Conditions by All Defendants*

The Dallas County Defendants, Officers Prater, Porter, and Chapa, rely on their on affidavits to establish that their conduct was objectively reasonable and did not violate any clearly established constitutional rights. (*See* Defs. Joint App. in Support of MSJ at 90, 92, 94). Plaintiff's evidence shows that the handicap shower may have posed a serious risk of substantial harm because of blood, feces, and other contaminants that were not cleaned away prior to forcing Plaintiff to use the shower in such condition. (*See* Plaintiff's Decl. at 27-32; Plaintiff's App. in Opposition to MSJ at 1-3, 7-9). Further, Plaintiff has raised genuine issues of material fact regarding whether such conditions were easily observable each time that Officers Prater, Porter, and Chapa escorted Plaintiff to the handicap shower and whether they ignored the danger to Plaintiff's health and safety. (*Id.*). Under Fifth Circuit precedent, it is well-settled that knowledge of unsanitary conditions of confinement and failure to act constitutes deliberate indifference. *See Gates*, 376 F.3d at 338. Thus, these Defendants received fair notice that failure to provide Plaintiff with adequate sanitation violated his constitutional rights. Viewing the facts in the light most favorable to Plaintiff, as the Court must, a clearly established constitutional right would have been violated by depriving him of adequate sanitation. Because there are multiple fact issues in dispute that must be resolved by credibility determinations, the Court cannot determine at this point in the litigation whether the conduct of Officer Prater, Officer Porter, and Officer Chapa was objectively reasonable in light of clearly established law at the time of the incident. Accordingly, the Court recommends that the Dallas County Defendants' motion for summary judgment on Plaintiff's claim of unsanitary conditions of

confinement be denied.

## V.  RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that *Defendants' Joint Motion for Summary Judgment* (Doc. # 130) be **GRANTED in part** and **DENIED in part**.  The Court should grant summary judgment on Plaintiff's claims of denial of medical care and failure to supervise or train against Defendants Moody and Bowers.  The motion should be denied with regard to Plaintiff's official capacity claims against Defendants Moody and Bowers, his claim of delay of medical care against Defendant Moody, and his claim of unsanitary conditions against all defendants because there are genuine issues of material fact that preclude summary judgment.

**SO RECOMMENDED** on this 30th day of August, 2007.

*Irma Carrillo Ramirez*
**IRMA CARRILLO RAMIREZ**
**UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings and recommendation on all parties by mailing a copy to each of them.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings, legal conclusions, and recommendation of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE