IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD COKER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-005-M (BH) |
| | § | |
| DALLAS COUNTY JAIL, et al., | § | |
| | § | |
| Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the District Court's *Standing Order of Reference,* filed October 11, 2006, this case has been referred to the undersigned Magistrate Judge for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions.  Before the Court are the following:

(1)  *Motion for Summary Judgment of Defendants Dallas County, Texas, Charles Prater, Anthony Porter, and Eleazar Chapa* ("Dallas MSJ"), filed September 2, 2008;

(2)  *Plaintiff Ronald Coker Jr.'s Motion to Strike Defendant Dallas County, Texas, Charles Prater, Anthony Porter, and Eleazar Chapa's Summary-Judgment Evidence and Brief in Support* ("Pl. Mot. Strike"), filed September 22, 2008;

(3)  *Defendants UTMB, Bowers, and Moody's Motion for Summary Judgment* ("UTMB MSJ"), filed September 22, 2008;

(4)  *Objections and Motion to Strike Exhibits Contained in Appendix to Plaintiffs' Response to Motion for Summary Judgment of Defendants Dallas County, Texas, Charles Prater, Anthony Porter, and Eleazar Chapa* ("Dallas Mot. Strike"), filed October 20, 2008;

(5)  *Defendant UTMB's Motion for Leave to File Answer to Plaintiff's Second Amended Complaint Out of Time* ("Mot. Leave"), filed October 27, 2008; and

(6)  *Defendants UTMB, Bowers, and Moody's Motion to Strike and Objections to Plaintiff's Appendix in Support of His Response to Defendants' Motion for Summary*

*Judgment* ("UTMB Mot. Strike"), filed October 27, 2008.

Based on filings and applicable law, the Court recommends that the motions for summary judgment be **GRANTED** in part and **DENIED** in part. The motions to strike are hereby **GRANTED** in part and **DENIED** in part, and UTMB's motion for leave to file an amended answer is hereby **DENIED**.

## I. BACKGROUND

### A.  Factual Background

Plaintiff Ronald Coker, Jr. ("Plaintiff") was incarcerated at the Dallas County Jail (the "Jail") as a pretrial detainee from November 17, 2003 to April 7, 2005, on charges of aggravated robbery and parole violation. (Dallas App. at 76).[1] He has a history of bipolar disorder, diabetes, heart disease, hypertension, seizures, and paralysis of his right side. (Dallas App. at 81; Dallas Resp. App. at 190). Due to his partial paralysis, or hemiparesis, he is confined to a wheelchair.[2] (UTMB App. Ex. F at 41).

Plaintiff brings this suit against Defendants Charles Prater, Anthony Porter, Eleazar Chapa, Dallas County (collectively, the "Dallas County Defendants"), Linda Moody, Steven Bowers, and the University of Texas Medical Branch ("UTMB") (with the Dallas County Defendants, collectively referred to as "Defendants").[3] He claims that they violated his rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act by: (1) forcing

---

[1] Plaintiff was convicted of these charges and is currently incarcerated at the Texas Department of Criminal Justice (TDCJ) – Institutional Division Jester III Unit, in Richmond, Texas. (*See* Dallas App. at 32).

[2] This Court previously discussed Plaintiff's medical record in detail and provides only a brief summary here. *See Coker v. Dallas County Jail*, 2007 WL 3022575, at *2-5 (N.D. Tex. Oct. 17, 2007).

[3] Defendants Charles Prater, Anthony Porter, Eleazar Chapa were Detention Service Officers of the Dallas County Sheriff's Department ("DCSD") assigned to duty in the Jail. (Dallas App. at 278, 281, 284). Defendants Linda Moody was a registered nurse employed by UTMB to provide medical services at the Jail. (UTMB App. Ex. F at 3-4). Defendant Steven Bowers, M.D., was employed by UTMB as the medical director of correctional managed care at the Jail. (*Id.* Ex. G at 3).

him to bathe in a dangerously unsafe and unsanitary shower facility; (2) delaying treatment of infections to his left leg; and (3) depriving him of his wheelchair for approximately three months and not providing him a handicapped-accessible shower chair and van.

Wheelchair-bound inmates such as Plaintiff used a handicapped shower in the Jail's medical unit.  (Dallas App. at 32-35).  Sworn reports by Plaintiff and two other inmates, Vandrick Jones ("Jones") and Ronald Stribling ("Stribling"), attest to deplorable conditions in the shower.  They aver that the floor and shower chair were constantly covered with blood, feces, and other human waste.  (Dallas Resp. App. at 39-30, 265, 255-56).  Plaintiff also avers that the shower drain frequently stopped up and that inmates had to wheel through the contaminated water that pooled on the floor.  (*Id*. at 246-247).  Additionally, Plaintiff and Jones aver there was no trash can to dispose of waste, so the floor was constantly littered with blood- and feces-covered clothing, used urine and colostomy bags, and dirty diapers.  (*Id*. at 246-47, 265).

Shortly after Plaintiff arrived at the Jail, he began to suffer infections in his lower left leg.  (*See* Dallas Resp. App. at 192; Answers to Magistrate Judge's Questionnaire ("MJQ") (docket #8)).  Specifically, he suffered recurring infections in his left leg, marked by redness, blanching, swelling, and the development of pus-filled abscesses.  (Dallas Resp. App. at 152, 153-157, 162-166, 171-173).  He tested positive for methicillin-resistant Staphylococcus aureus ("MRSA") and was diagnosed with cellulitis, a diffuse and subcutaneous inflammation of connective tissue that can lead to ulceration and abscess.  (*Id*. at 153-61, 174-179, 185-88, 193, 195, 196; *see* Medical Dictionary, Nat'l Library of Medicine, *available at* http://www.nlm.nih.gov (last visited Feb. 1, 2009)).  As a result of these infections, he repeatedly went to Parkland Health & Hospital System ("Parkland") for surgery and treatment.  *See id*.  His condition improved once he was admitted to Parkland, but

upon returning to the Jail each time, it deteriorated until he needed to go to Parkland again. *Id.*

On October 30, 2004, Jail officials, on an anonymous tip from another inmate, searched Plaintiff's wheelchair and uncovered Trazadone, Xanax, Darvocet, Tylenol #3, tweezers, medical scissors, syringes, a scalpel, an 18-gauge needle, an intravenous flush, and a 5-inch piece of metal.[4] (Dallas App. at 76-77; UTMB App. Ex. I at 98; Ex. L at 13-14). Based upon discovery of these contraband items, the very next day Jail staff placed Plaintiff on administrative custody in a single cell and confiscated his wheelchair. (Dallas App. at 77; UTMB App. Ex. N at 17, 41). Plaintiff did not have a wheelchair for approximately three months (the duration of his confinement to a single cell) although security officers provided him with a wheelchair whenever he left his cell, such as for clinic appointments and showers. (*See* Dallas Resp. App. at 216). Plaintiff avers that because he did not have access to his wheelchair, he was forced to sleep on the floor and crawl around his cell using his left arm and infected left leg. (Dallas Resp. App. at 114, 120-21). The Defendants do not deny that Plaintiff did not have his wheelchair for approximately three months while confined to a single cell. They contend, however, that the wheelchair's absence did not restrict his movement because the cell, which measured 8'9" x 6', was small and because he could stand on one leg. (Dallas App. at 77; UTMB App. Ex. F. at 40, 181).

**B.**     **Procedural History**

This case presents a convoluted procedural history. On January 24, 2005, Plaintiff, proceeding *pro se*, filed an amended complaint under 42 U.S.C. § 1983 and alleged that various

---

[4] Trazadone is a serotonin modulator prescribed to treat depression. Xanax is the brand name for alprazolam, a medication prescribed to treat anxiety disorders and panic attacks. Darvocet is the brand name for acetaminophen and propoxyphene, a drug combination prescribed to treat mild to moderate pain. Tylenol #3 is a prescription form of acetaminophen that contains codeine. *See* Drugs & Supplements, Nat'l Library of Medicine, *available at* http://www.nlm.nih.gov (last visited Feb. 1, 2009).

individuals violated his constitutional rights by failing to provide adequate medical care, failing to provide adequate sanitation, depriving him of a wheelchair, and by sexually assaulting him.  (*See* docket #4).  A Magistrate Judge's Questionnaire was sent to Plaintiff in order to clarify his claims, and his response was received on March 3, 2005.  (Docket #8).  After service and upon motion, the Court also ordered Plaintiff to submit a Rule 7(a) reply to address the defense of qualified immunity raised by Defendant Bowers.  (Docket #122).  These three pleadings - the amended complaint, the responses to the MJQ, and the Rule 7(a) reply - embody Plaintiff's original claims.  *Coker*, 2007 WL 3022575, at *5; *see id*. at *1 (District Court determining that Plaintiff alleged wheelchair deprivation claim against Defendant Bowers in his Rule 7(a) reply).

Because Defendants asserted the defense of qualified immunity in their answers, this Court ordered Defendants to file a joint motion for summary judgment on the issue of qualified immunity.  (Docket #122).  The District Court adopted this Court's recommendation on October 17, 2007, and granted the motion in part.  The District Court dismissed Plaintiff's claims of (1) sexual assault against Defendant Prater; (2) failure to train and supervise against Defendant Bowers; and (3) denial of medical care against Defendants Bowers and Moody.  *Coker*, 2007 WL 3022575, at *11-17.  The District Court denied Defendants' motion for summary judgment as to the claims of (1) delay of medical care against Defendant Moody; and (2) unsanitary conditions against all defendants.[5]  *Id*. at *21-22.  Since Plaintiff's claims survived summary judgment on the issue of qualified immunity, the Court *sua sponte* reconsidered Plaintiff's prior motion for appointment of counsel.  (Docket #155).  After appointing counsel, the Court granted Plaintiff leave to file his Second Amended

---

[5] Defendant Bowers did not move for summary judgment on the issue of qualified immunity for Plaintiff's wheelchair deprivation claim asserted against him in the Rule 7(a) reply.  *Coker v. Dallas County Jail*, 2007 WL 4104357, at *1 (N.D. Tex. Nov. 19, 2007).

Complaint, which is the live pleading in this case. (Docket #175).

The Second Amended Complaint (hereinafter, complaint, or "Compl.") further clarified the issues and parties before the Court. It alleged violations under (1) 42 U.S.C. § 1983 against the Dallas County Defendants, UTMB, Moody, and Bowers; and (2) Title II of the Americans with Disability Act (42 U.S.C. § 12131) and the Rehabilitation Act (29 U.S.C. § 794) against Dallas County and UTMB. (Compl. at 9-17). The District Court subsequently dismissed the § 1983 claims and the ADA and Rehabilitation Act claims for lack of a handicapped-accessible shower chair and van against UTMB on the grounds of sovereign immunity and untimeliness, respectively. *Coker v. Dallas County Jail*, 2008 WL 763166 (N.D. Tex. Mar. 19, 2008) (Lynn, J.); (Docket #201; *see* docket #194). Accordingly, the following remain:

(1)     Claims under the Americans with Disabilities Act and the Rehabilitation Act against Dallas County and UTMB;

(2)     Claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution by subjecting plaintiff to (a) unsanitary conditions, (b) wheelchair deprivation (including lack of handicapped-accessible shower chair and van) against Dallas County Defendants, Moody, and Bowers; and

(3)     Claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution by failing to provide plaintiff adequate and prompt medical treatment against Dallas County and Moody.

(Compl. at 9-17; *see* docket #201). Plaintiff seeks compensatory damages, future medical expenses, past and future physical pain and suffering, past and future mental anguish, punitive damages, attorney's fees, pre- and post-judgment interest, costs of court, and any other relief in law or equity to which he is entitled. (Compl. at 17).

The Dallas County Defendants filed their motion for summary judgment on September 2, 2008. (Docket #217). Plaintiff filed his response on September 22, 2008 (docket #225); the Dallas

County Defendants did not file a reply. Defendants UTMB, Moody, and Bowers (collectively, "UTMB Defendants") filed their motion for summary judgment on September 22, 2008. (Docket #228). Plaintiff filed his response on October 14, 2008 (docket #234); the UTMB Defendants filed their reply on October 20, 2008. (Docket #237). The parties also filed objections and motions to strike supporting evidence (dockets ##224, 238, 244), and Defendant UTMB filed a motion for leave to file an answer to Plaintiff's complaint. (Docket #243). After adequate time for responses and replies, the issues are now ripe for review.

## II. MOTION FOR LEAVE TO FILE ANSWER

The Court first considers Defendant UTMB's motion for leave to file an out-of-time answer to Plaintiff's complaint.[6] (Mot. Leave at 1, 4). Plaintiff does not oppose allowing UTMB to file an answer out of time as long as the answer does not raise any affirmative defenses not included in prior responsive pleadings. (Mot. Leave Resp. at 1). UTMB seeks to amend its pleadings out-of-time to assert an affirmative defenses not previously raised, lack of exhaustion of administrative remedies.

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired. *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536

---

[6] It is undisputed that UTMB's deadline to file its answer to the complaint has expired. On October 25, 2007, this Court issued a scheduling order that established November 21, 2007, as the deadline for the parties to amend their pleadings. (Docket #171, at 1). Plaintiff filed his complaint on November 9, 2007 (docket #175), but UTMB never filed an answer. (*See* docket sheet).

(5th Cir. 2003).  In *S&W Enterprises*, the Fifth Circuit considered the following four factors to decide whether an untimely motion for leave to amend should be granted: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.  *Id*. (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

UTMB's motion makes no apparent effort to establish good cause or even set forth the relevant standard.  (*See* Mot. Leave).  The only factor mentioned is the explanation for failure to timely move for leave to amend, which UTMB characterizes as "an oversight by the undersigned counsel, who believed that an answer on behalf of UTMB had been filed."  (*Id*. at 4).  Under the good cause standard, inadvertence or oversight by counsel is "tantamount to no explanation at all."  *S&W Enters.*, 315 F.3d at 536; *Am. Tourmaline*, 1998 WL 874825, at *1.  This factor therefore favors Plaintiff.  As for the second factor, the importance of the amendment, UTMB's failure to assert exhaustion of administrative remedies raises the possibility of waiver for this affirmative defense.  (*See* Part IV.B, *infra*).  Exhaustion, however, was not the only argument raised in favor of granting summary judgment since UTMB also contends that Plaintiff failed to state an actionable claim under Title II of the ADA and the Rehabilitation Act.  (UTMB MSJ at 6-8).  The second factor therefore slightly favors UTMB.  With regards to the third factor, potential prejudice in allowing the amendment, it favors Plaintiff because he has already gone through the time and expense of responding to UTMB's motion for summary judgment.  *See In re Enron Corp.*, 2007 WL 207028, at *3 (S.D. Tex. Jan. 23, 2007) (considering time and expense of preparing a motion to dismiss as prejudicial to opponent of an untimely motion for leave to amend).  The fourth factor, the

availability of a continuance, also favors Plaintiff since a continuance is unlikely. The case has been pending for almost four years and is far along in the litigation process.

Considering the four factors together, the Court finds that UTMB did not meet its burden to establish good cause for leave to file its untimely answer to Plaintiff's complaint. *S&W Enters.*, 315 F.3d at 536. UTMB's motion for leave to file an amended answer to assert new affirmative defenses is therefore **DENIED**.

### III. MOTIONS TO STRIKE EVIDENCE

A. <u>**Plaintiff's Objections and Motion to Strike**</u>

Plaintiff filed a motion to strike portions of the Dallas County Defendants' summary judgment evidence on September 22, 2008.

#### 1. Exhibit 4: Sweet Affidavit and Jail Records

##### *a. Double Hearsay*

Plaintiff first objects to pages 100-26, 141-58, and 173 of the Dallas County Defendants' appendix and pages 76-77 of the Sweet Affidavit because they contain inadmissible hearsay within hearsay. (Pl. Mot. Strike at 2). The portions of the Sweet Affidavit and jail records to which Plaintiff objects consist of incident reports (pages 100-26), disciplinary board proceedings (141-58), a note from the jail infirmary (173), and statements by the records custodian based on the information therein (76-77). The incident reports, disciplinary board proceedings, and infirmary note contain statements from unidentified inmates, Jail officers and jail staff, and remarks allegedly made by Plaintiff himself.

For hearsay within hearsay to be admissible, each part of the combined statement must conform to an exception to the hearsay rule. Fed. R. Evid. 805. Dallas County Defendants assert

that the records are admissible because they fall within the business records and official records hearsay exceptions. (Pl. Mot. Strike Resp. at 4) (citing Fed. R. Evid. 803(6) and (8)). Prison systems, such as the Jail, lie within Federal Rule of Evidence 803(6)'s conception of a business. *Payne v. Collins*, 986 F.Supp. 1036, 1058 n.47 (E.D. Tex. 1997) (citing *Wheeler v. Sims*, 951 F.2d 796, 802 n.5 (7th Cir. 1992)). "Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991). If the source of the information is an outsider, the outsider's statement must fall within another hearsay exception to be admissible. *Id.*

The jail records recount investigations performed by the Jail staff or incident reports by jail staff or medical personnel. Although the impetus for some of the investigations were reports from unidentified inmates, Jail staff investigated the anonymous reports and summarized their own findings in the jail records. (*See e.g.*, Dallas MSJ App. at 104, 107, 115). Since employees of the Dallas County Sheriff's Department and its medical staff acted in the regular course of business in preparing the jail records, instances of multiple hearsay are excused by the business records exception.[7] *Wilson*, 939 F.2d at 271. Plaintiff's statements in the jail records are also admissible since they are admissions by party-opponent and are not hearsay. Fed. R. Evid. 801(d)(2). Accordingly, Plaintiff's objections to these jail records are **OVERRULED** and the motion to strike statements from employees of the Dallas County Sheriff's Department, its medical staff, and

---

[7]While the statements in the jail records made by unidentified inmates are outside sources of information that would ordinarily be excluded from the exception, *see Wilson*, 939 F.2d at 271, the Court does not consider the statements to have been offered for the truth of the matter, but rather, as operative facts showing why the Jail staff conducted their investigations. Plaintiff's objections to these statements are therefore **OVERRULED**.

Plaintiff is **DENIED**.

### b.    *Conclusory Statements*

Plaintiff next objects to the Sweet affidavit because portions contain unsupported conclusory statements that are not credible and invade the province of the jury.  (Pl. Mot. Strike at 2).  The statements to which Plaintiff objects are as follows: Plaintiff's wheelchair was withheld due to security concerns; DCSD informs inmates of the two step grievance procedure through receipt of a handbook and closed circuit television; the summary of the steps of the grievance procedure; and the assertion that no evidence shows deliberate indifference to Plaintiff's medical needs, a risk of harm or injury from the conditions of confinement, or denial of benefits based on Plaintiff's disability.  (*Id*. at n.2, objecting to Dallas MSJ App. at 77-78).

Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).  Such unsupported conclusory statements in an affidavit should be stricken from the record.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).  The statement about Plaintiff's wheelchair being withheld for security concerns is based upon the reason set forth in jail disciplinary records attached to the Sweet affidavit.  Since the statement is not about an ultimate issue, and is not a conclusory fact or conclusion of law, it is admissible.  *See Galindo*, 754 F.2d at 1216.  Plaintiff's objection to this statement in the Sweet affidavit is therefore **OVERRULED** and the motion to strike is **DENIED**.

The two statements about the grievance procedure are not based upon any of the jail records attached in support.  There is no supporting document showing the ways in which Dallas County allegedly informs inmates of the grievance procedure.  The Court notes that even if there were such

a document, it would not establish that Plaintiff was advised of the grievance procedure. Likewise, there is no supporting document setting forth the steps of the grievance procedure in place at the Dallas County Jail. *See* Part III.A.d (striking 2005 version of handbook). Since the two statements about the grievance procedures set forth conclusory facts unsupported by the record, they are inadmissible. *Salas*, 980 F.2d at 305. Plaintiff's objections to these two statement are **SUSTAINED**, and the motion to strike is **GRANTED**.

Finally, the assertion about there being "no evidence" of deliberate indifference attests to an ultimate issue in this case and is insufficient to support a motion for summary judgment. *Galindo*, 754 F.2d at 1216. It is therefore inadmissible. Plaintiff's objection to this statement is **SUSTAINED** and the motion to strike is **GRANTED**.

### c.	Irrelevant Records

Plaintiff next objects to the relevance of the records contained on pages 82-91 (offense sheets), 100-26 and 141-58 (incident reports), and 127-39 (medication refusal forms). (Pl. Mot. Strike at 3).

The Court did not consider the offense sheets in deciding the motions for summary judgment. Accordingly, Plaintiff's objection to pages 82-91 of Defendant's appendix is **OVERRULED** and the motion to strike is **DENIED** as **moot**. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 984690, at *1 n.6 (N.D. Tex. Apr. 14, 2006) (Fitzwater, J.) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

As for the remaining records, all relevant evidence is admissible. Fed. R. Evid. 402. "Relevant evidence" means evidence that has a tendency to make the existence of a consequential

fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. The incident reports and medication refusal forms all pertain to the medical care Plaintiff received while detained in the Jail, his conditions of confinement, or the reasons for the confiscation of his wheelchair. These records are therefore relevant to Plaintiff's claim and are admissible. Plaintiff's objections to pages 100-26, 127-39, and 141-58 are **OVERRULED,** and the motion to strike these exhibits is **DENIED**.

### d. Documents not Produced

Finally, Plaintiff objects to the inclusion of the Inmate Handbook on pages 227-40 of the appendix because it was not produced and there is no evidence that it is the same handbook Plaintiff allegedly received while at the jail. (Pl. Mot. Strike at 4). The handbook in Dallas County Defendant's appendix was revised in February 2002; the handbook produced at Plaintiff's June 3, 2008 deposition was revised in May of 2005. (*See* Dallas MSJ App. at 227; Pl. Mot Strike App. at 2, 13). The Dallas County Defendants do not dispute that they failed to produce the 2002 version to Plaintiff. (Pl. Mot. Strike Resp. at 5).

Under the Federal Rules of Civil Procedure governing disclosures and discovery, if a party fails to provide information requested during discovery, the party is not allowed to use that information on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c). In deciding whether a failure to produce is harmless and thus whether to strike evidence, the Court considers the following four factors: (1) the importance of the evidence; (2) the potential prejudice of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003); *Jacobs v.*

*Tapscott*, 2006 WL 2728827, at *12 (N.D. Tex. Sep. 25, 2006) (Fitzwater, J.) (applying Fifth Circuit's harmless error analysis for abuse of discretion to determine whether a district court should strike evidence).

With regards to the first factor, the 2002 version is important to the Dallas County Defendants because the grievance procedures it contains are those on which they base their motion for summary judgment. The 2002 version is not critical, however, because the parties do not dispute the mechanics of the two-step grievance procedure. This factor therefore slightly favors the Dallas County Defendants. As for the second factor, Plaintiff contends that due to the failure to timely provide the 2002 version, he was unable to ask questions during depositions about the policies and procedures in place during his detention in the Jail, which ended on April 7, 2005. (Pl. Mot. Strike Reply at 4; *see* Dallas App. at 76). Instead, he had to ask questions about policies established in May of 2005, almost a month after he left the Jail. The Dallas County Defendants assert there is no prejudice because there is no material difference between the two versions, (Pl. Mot. Strike Resp. at 5), but there are some differences. The second factor therefore favors Plaintiff. Third, a motion for continuance is unlikely since the case has been pending for almost four years and is far along in the litigation process. This factor favors Plaintiff. With regards to the fourth factor, the Dallas County Defendants contend that Plaintiff did not specifically request the 2002 version. (Pl. Mot. Strike Resp. at 5). Under the Federal Rules of Civil Procedure, a party has a duty to disclose all documents it may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). The grievance procedure in place at the Jail most certainly falls within the documents to be disclosed since the Dallas County Defendants rely upon it for their affirmative defense of exhaustion. Thus, their contention that Plaintiff did not specifically request the 2002 version is irrelevant.

Additionally, Plaintiff disputes this assertion. In his reply, he states that he submitted several requests for production seeking "documents sufficient to describe the manner in which inmates were required to assert grievances," "documents setting forth the Jail's official disciplinary policies and procedures," and "all documents the County relied on to support its defenses." (Pl. Mot. Strike Reply at 3). These specific requests for production were sufficiently detailed to request the 2002 version the Dallas County Defendants now rely upon in their motion for summary judgment.

Considering the four factors, the first factor slightly favors the Dallas County Defendants and the second, third, and fourth factors favor Plaintiff. The Court therefore concludes that the Dallas County Defendants' failure to produce the 2002 handbook, which detailed the grievance procedures in place during Plaintiff's detention at the Jail, was not harmless. *Tex. A&M Research Found.*, 338 F.3d at 402. Accordingly, Plaintiff's objection to pages 227-40 of Defendant's Exhibit is **SUSTAINED** and the motion to strike is **GRANTED**.

### 2. Exhibit 5: Skinner Affidavit

Plaintiff objects to portions of the affidavit of Walter Skinner, M.D. because they contain improper conclusions that invade the province of the jury.[8] (Pl. Mot. Strike at 4 (objecting to Def. App. at 243-44)). The Dallas County Defendants designated Dr. Skinner as an expert witness to provide expert testimony about Plaintiff's medical condition and treatment during his confinement in the Jail. (*See* docket #200). Plaintiff objects to portions of the affidavit averring that there is no evidence in the approximately 800 pages of medical records to support Plaintiff's allegations of

---

[8] The Court notes that Plaintiff relies on the concurring opinion from *First United Financial Corp. v. U.S. Fidelity & Guaranty Co.*, 96 F.3d 135, 141 (5th Cir. 1996) to support his contention that the affidavit should be stricken because it fails to include an indication of Dr. Skinner's reasoning process. (Pl. Mot. Strike at 5; Pl. Mot. Strike Reply at 5). The majority in *First United Financial* struck an expert opinion because it went beyond the scope of expertise, not because it failed to describe the reasoning process. 96 F.3d at 136. Additionally, the majority explicitly found the concurring opinion "both unnecessary and unhelpful." *Id.*

constitutional deprivations.

Expert witnesses may perform two roles: (1) they may explain evidence to a fact finder, and (2) they may act as the source of evidence for a fact finder. *Salas*, 980 F.2d at 305 (citing *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)). The standard in deciding whether an expert's opinion should be admitted is stated in Rule 702: whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Salas*, 980 F.2d at 305 (citing 3 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence ¶702[01] (1992)). "Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Air Crash at New Orleans*, 795 F.2d at 1233.

Dr. Skinner's affidavit contains only his conclusion concerning counsel's factual and legal arguments. It does it cite to any of the underlying facts contained in the medical record. Nor does it provide any indication of how Dr. Skinner, in his expert opinion, determined that Plaintiff received adequate and timely care for his afflictions. Additionally, the affidavit does not address the evidence supporting Plaintiff's claims identified in this Court's previous order denying qualified immunity for the individual defendants. *See Coker*, 2007 WL 3022575, at *13-22. Nevertheless, because the affidavit is not being presented to a jury, the Court will not strike the affidavits but instead will only consider it to the extent it complies with Rule 702. *Anderson v. Dallas County, Texas*, 2007 WL 1148994, at *5 (N.D. Tex. Apr. 18, 2007) (Fish, C.J.). Plaintiff's objections to the Skinner Affidavit are therefore **OVERRULED** and the motion to strike is **DENIED**.

### 3. Exhibits 7, 8, and 9: Prater, Porter, and Chapa Affidavits

Finally, Plaintiff objects to the affidavits of three DCSD officers assigned to duty in the Jail.

(Pl. Mot. Strike at 5). Specifically, Plaintiff objects to the testimony concerning responsibility for cleaning and sanitation because it contradicts the officers' earlier deposition testimony without explanation. Plaintiff contends these are sham affidavits that cannot be used in support of summary judgment. *Id.* Merely because there is a discrepancy between deposition testimony and the deponent's later affidavit does not require the Court to disregard the affidavit. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). Such a discrepancy in an affidavit, however, must only explain certain aspects of a deposition, not contradict it. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

During their depositions, the officers testified that they made sure the handicapped shower was clean before and after each use. (Pl. Mot. Strike App. at 19-21, 25-27, 32, 34, 35, 37). Defendant Chapa testified more specifically that Jail officers supervised the trustees while they cleaned, and that if the shower was not clean, he would personally clean it. (*Id.* at 32, 36). Yet it in their affidavits, each of the officers testified that "all cleaning and sanitation services in the Dallas County Jail were performed by the jail trustees in the areas where Plaintiff was confined and not by me." (Dallas App. at 279, 282, 285). These affidavits contradict prior sworn statements in the depositions without explanation and are therefore inadmissible. *S.W.S. Erectors*, 72 F.3d at 496. Accordingly, Plaintiff's objections to these exhibits as they pertain to who is responsible for cleaning and sanitation services are **SUSTAINED** and the motion to strike is **GRANTED**.

## B.    Dallas County Defendants' Objections and Motion to Strike

On October 20, 2008, the Dallas County Defendants presented a laundry list of objections to five of Plaintiff's exhibits. (*See* Dallas Mot. Strike) (objecting to Dallas Resp. App. Ex. L, M, N, Q, and R). They made no effort whatsoever to identify the portions of the exhibits to which each

objection applies, nor did they offer any explanation to substantiate their objections. Such general objections do not comply with the requirements of the Federal Rules of Evidence, and the Court will not ferret through Plaintiff's lengthy appendix in search of objectionable statements. *Tucker v. SAS Inst., Inc.*, 462 F.Supp.2d 715, 722 (N.D. Tex. 2006) (Fish, C.J.) (denying motion to strike because movant offered only vague assertions and a list of challenged paragraphs). Consistent with the practice of other judges in this district, the Dallas County Defendants' objections are **OVERRULED** and the motion to strike is **DENIED**. *See e.g.*, *Shepherd v. Dallas County*, 2008 WL 656889, at *6 (N.D. Tex. Mar. 6, 2008) (Fitzwater, C.J.) (overruling objections because Dallas County failed to point to inadmissible components); *Palo v. Dallas County*, 2007 WL 2140590, at *8 (N.D. Tex. July 26, 2007) (Fitzwater, J.) (same).

## C.     UTMB Defendants' Objections and Motion to Strike

Defendants UTMB, Bowers, and Moody (collectively, the "UTMB Defendants") filed a motion to strike portions of Plaintiff's summary judgment evidence on October 27, 2008.

### 1.     Stribling Affidavit

The UTMB Defendants first object to the affidavit of Ronald Stribling on the grounds that it fails to state a specific time frame and contains impermissible expert testimony.[9] (UTMB Mot. Strike at 1-3).

Citing to *Richardson v. Oldham*, the UTMB Defendants contend that the affidavit is not competent summary judgment evidence because Mr. Stribling averred that he witnessed events over the course of a two year period. (UTMB Mot. Strike at 2) (citing 12 F.3d 1373, 1378-79 (5th Cir.

---

[9] The UTMB Defendants also objected on the grounds of lack of personal knowledge and hearsay. In an earlier ruling on the same affidavit, the Court overruled these objections and will not reconsider its prior ruling. *See Coker*, 2007 WL 3022575, at *8.

1994)).  In *Richardson*, the Fifth Circuit found no abuse of discretion when the district court determined an affidavit was insufficiently specific because the affiant could not identify the season in which an allegedly illegal search of his home took place.  12 F.3d at 1378.  In this case, Mr. Stribling does not describe a single event, but rather conditions of the handicapped shower that persisted over a two year period or events that occurred multiple times.  *Richardson* is therefore distinguishable from the case before the Court, and the Court finds that the Stribling affidavit provides competent summary judgment evidence about the conditions of the Jail.

Without elaboration, the UTMB Defendants also move to strike paragraphs 6-8, 10, and 13-15 as conclusory and paragraphs 13 and 14 as containing impermissible expert testimony.  (UTMB Mot. Strike at 3).  These paragraphs describe the conditions of the handicapped shower or procedures for ensuring its sanitation.  They are neither conclusory nor present expert testimony.

Accordingly, the UTMB Defendants' objections to the Stribling Affidavit are **OVERRULED** and the motion to strike is **DENIED**.

### 2. Jones Affidavit

The UTMB Defendants similarly object to the affidavit of Vandrick Jones because it is not based on personal knowledge, is insufficiently specific, and contains unsupported speculation, inadmissible hearsay, and expert testimony.  (UTMB Mot. Strike at 3-4).

In his affidavit, Mr. Jones avers that he is "personally acquainted with the facts herein stated," and he provides an account of the handicapped shower's typical condition and his own account of the Jail staff's knowledge of the shower's typical condition.  (*See* UTMB Resp. App. at 251-54).  He also avers that he was incarcerated at the jail with Plaintiff and witnessed many of the events or circumstances that gave rise to this action.  To the extent that Mr. Jones's affidavit

provides a personal account of the handicapped shower's typical condition and the Jail staff's knowledge of the shower's typical condition, this testimony is sufficiently specific and constitutes relevant summary judgment evidence. To the extent that Mr. Jones's affidavit contains statements that constitute hearsay, expert testimony, or are conclusory, the Court does not consider such statements in reaching its conclusions on the UTMB Defendants' motion for summary judgment. *Salas*, 980 F.2d at 304 (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit). Accordingly, the UTMB Defendant's objections to Mr. Jones's affidavit are **OVERRULED** and the motion to strike is **DENIED**.

### 3. Plaintiff's 2007 Declaration

Finally, the UTMB Defendants object to Plaintiff's 2007 Declaration in its entirety because it is based upon unsupported speculation, subjective beliefs, impermissible expert testimony, and inadmissible hearsay. (UTMB Mot. Strike at 4). The UTMB Defendants do not identify which portions of the 42 page declaration are improper. (*See id.*; *see* UTMB Resp. App. at 195-237). As with the Dallas County Defendants' objections, the Court will not ferret through the 42 page declaration in search of objectionable statements. *See Tucker*, 462 F.Supp.2d at 722. To the extent that the 2007 declaration contains inadmissible statements, the Court does not consider such statements in reaching its conclusions. *Salas*, 980 F.2d at 304. Accordingly, the UTMB Defendant's objections to Plaintiff's 2007 affidavit are **OVERRULED** and the motion to strike is **DENIED**.

# IV.  SUMMARY JUDGMENT MOTIONS

## A.    Legal Standard

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden,

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

**B.    Exhaustion of Administrative Remedies Defense**[10]

Defendants assert that they are entitled to summary judgment because there is no genuine issue of fact that Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997(e)(a), the Prison Litigation Reform Act ("PLRA"). (Dallas MSJ Br. at 10-11; UTMB MSJ Br. at 9-10).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense. *Jones*, 549 U.S. at 216; *Carbe v. Lappin*, 492 F.3d 325, 327 (5th Cir. 2007). Defendants therefore have the burden on summary judgment to establish that Plaintiff did not make use of the available administrative remedies at the Jail. *See Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994) (affirmative defense requires the movant on summary judgment to establish each element of defense as a matter of law) (citing *Celotex*, 477 U.S. at 322-23); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (where the movant bears the burden of proof on an issue, he must establish all of the essential elements of a claim to warrant judgment in his favor).

_____

[10] Although the Defendants raise exhaustion as their second and third bases for summary judgment, (*see* Dallas MSJ Br. at 10; UTMB MSJ Br. at 9), the Court addresses this argument first since exhaustion under the PLRA is a prerequisite to suit. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001).

1.     **Waiver by Defendant UTMB**

As a preliminary matter, the Court considers Plaintiff's contention that Defendant UTMB waived this affirmative defense by failing to assert it in its first responsive pleading. (UTMB Resp. at 12). Affirmative defenses such as exhaustion of administrative remedies must be set forth in a responsive pleading. Fed. R. Civ. P. 8(c); *Jones v. Bock*, 549 U.S. 199, 216 ( 2007) (exhaustion under the PLRA is an affirmative defense). A defendant's post-claim motions are "pleadings" if they respond to the substance of the allegations. *U.S. v. Burzynski Cancer Res. Inst.*, 819 F.2d 1301, 1307 (5th Cir. 1987).

Defendant UTMB never filed an answer (*see* Part II, *supra*), and it did not assert exhaustion as a defense in the Rule 12(b)(6) motion it filed on December 6, 2007. (*See* docket #182). UTMB's December 6, 2007 motion to dismiss set forth the affirmative defenses of immunity and statute of limitations but not lack of exhaustion of administrative remedies. (Docket #182, 4-7). Because the first motion to dismiss addressed the substance of Plaintiff's allegations, it was a responsive pleading under Rule 7(a). *Burzynski*, 819 F.2d at 1307 (motion that first raised affirmative defense of immunity was the first responsive pleading). An affirmative defense may not be raised on a motion for summary judgment unless that motion is the first responsive pleading to the substance of the allegations. *Id*. Since Defendant UTMB failed to raise exhaustion in its December 6, 2007 motion to dismiss, under *Burzynski* it may not now raise the affirmative defense.

As a general rule, failure to assert an affirmative defense in a responsive pleading results in waiver. *See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491-92 (5th Cir. 2001). Noncompliance can be excused if the defendant raises the issue at a "pragmatically sufficient time" and there is no prejudice to the plaintiff. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir.

2007). Courts that have considered the issue of what constitutes a "pragmatically sufficient time" have declined to establish a bright line; some have found more than one year before trial to be pragmatically sufficient time, others have found issues first raised during trial to be made in a pragmatically sufficient time. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000) (more than a year before trial); *Lucas v. U.S.*, 807 F.2d 414, 418 (5th Cir. 1986) (at trial).

Plaintiff contends that UTMB's year-long delay in raising exhaustion is not a pragmatically sufficient time. (Mot. Leave Resp. at 3). Although all of the pretrial deadlines have expired, no trial date has been set. (*See* docket #171, at 3). Thus, if the Court were to use the amount of time remaining before trial as a marker for what constitutes a pragmatically sufficient time, ample time remains. As for prejudice, Defendant UTMB did not raise the affirmative defense of exhaustion until the instant motion, but all of the other defendants raised it in their answers to Plaintiff's complaint. (*See* docket #179 at 4; #185 at 8). Plaintiff therefore cannot claim to be surprised by Defendant UTMB's assertion of exhaustion. *See Bayou Fleet*, 234 F.3d at 860. Additionally, Plaintiff had the opportunity to respond to Defendant UTMB's argument in his response to the instant motion for summary judgment. *Briggs v. Dallas Area Rapid Transit*, 2003 WL 21804264, at *2 n.1 (N.D. Tex. Mar. 14, 2003) (Godbey, J.). Given that a trial date has not yet been set, that the other defendants raised exhaustion more than a year ago, and that Plaintiff had the opportunity to respond to UTMB's arguments in the instant motion, UTMB's noncompliance for failing to assert exhaustion in its first responsive pleading is excused. *Arismendez*, 493 F.3d at 610. Accordingly, UTMB did not waive its affirmative defense of exhaustion.

### 2. Exhaustion

The Court now turns to Defendant's claim that Plaintiff failed to exhaust administrative

remedies as required by the PLRA. (Dallas MSJ Br. at 10-11; UTMB MSJ Br. at 9-10).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997(e)(a)(2003). The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion under the PLRA is mandatory, and the requirement is strictly construed. *See Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (*per curium*). Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings such as money damages. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001). The Court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted). "The exhaustion requirement may be subject to certain defenses such as waiver, estoppel, or equitable tolling." *Days*, 322 F.3d at 866. Additionally, a district court must afford a prisoner an opportunity to show that he has either exhausted the available administrative remedies or that he should be excused from this requirement. *Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir. 1981). One such excuse is when administrative remedies are inadequate because prison officials have ignored or interfered with a prisoner's pursuit of an administrative remedy. *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982).

In this case, the parties do not dispute the mechanics of the Jail's two-step procedure used

by inmates to present grievances. The first step requires the inmate to submit a grievance to any staff member. After noting the date and time the grievance is received, the staff member delivers the grievance to the on-duty shift supervisor who, in turn, forwards it to the Grievance Board for review. Upon receipt of a written decision from the Grievance Board, the inmate has five days to initiate the second step of the grievance procedure, which is the submission of a written appeal to the Inmate Grievance Appeal Board. The Appeal Board reviews all documents submitted in connection with the appeal and then issues a decision. An inmate must pursue his grievance at both steps in order to exhaust his administrative remedies. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

Defendants assert that Plaintiff failed to exhaust his available administrative remedies because he never filed a step 2 grievance with the Inmate Grievance Appeal Board. (Dallas MSJ Br. at 11; UTMB MSJ Br. at 10). In support of this assertion they cite to Plaintiff's grievance submissions, which contain 11 step 1 grievances but no step 2 grievances. (*See* Dallas MSJ App. Ex. H; UTMB MSJ App. Ex. N). The UTMB Defendants also cite to Plaintiff's deposition, during which he acknowledged receipt of responses to each of the step 1 grievances presented to him at the deposition. (UTMB MSJ App. Ex. H at 51-53). By pointing the Court to the absence of any step 2 grievances, Defendants met their initial summary judgment burden to show there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. *See Celotex*, 477 U.S. at 323-25.

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. Plaintiff contends there is evidence in the summary judgment record showing that jail officials prevented him

from knowing the grievance procedure. (Dallas Resp. at 21-24; UTMB Resp. at 14-17). The Jail purports to notify inmates about the grievance procedure in three ways. First, inmates are supposed to be given a copy of the Inmate Handbook explaining the grievance procedure when they are booked into the Jail. (UTMB Resp. App. at 47-48). Plaintiff, however, testified that he never received a copy of the Inmate Handbook (*id*. at 66), and Defendants failed to identify anything in their supporting evidence to show that Plaintiff received a copy of the handbook. In fact, Chief Deputy Edgar McMillian, testifying for Dallas County, confirmed that Plaintiff's "buff card" contained no signature acknowledging receipt of the handbook as he believed was required by standard procedure. (*Id*. at 49-50); *see Alexander*, 351 F.3d at 630 (evidence that inmate received handbook showed grievance procedure was available). Second, the Inmate Grievance Board's procedures specify that it "will notify the Grievant in writing, on all grievances in which no action is taken, that the Grievant may make written notice of appeal regarding the finding." (UTMB Resp. App. at 263). In violation of its own procedures, none of the step 1 grievance responses received by Plaintiff say anything about an appeal; they simply deny the request. (*See* UTMB App. Ex. N at 5, 11, 17, 22, 26, 32, 37, 42, 48, 55, 60). Third, Chief McMillian testified that Jail rules and regulations, including the grievance procedure, occasionally are posted on closed-circuit television. (UTMB Resp. App. 50-51). Plaintiff testified that he did not know the rules and regulations were sometimes available on the Jail's closed-circuit television. (UTMB MSJ App. Ex. H at 56). While lack of knowledge or ignorance about a grievance procedure does not excuse exhaustion, *see Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), a question about whether the grievance procedures actually were posted on closed-circuit television remains because in addition to Plaintiff, Defendant Chapa, an officer at the jail, testified that he never saw the grievance procedure played on a closed-

circuit television.  (UTMB Resp. App. at 59).

Plaintiff further contends that jail officials ignored his complaints and thereby frustrated his attempt to file a step 2 grievance.  During his deposition, Plaintiff testified that he filed grievances that were never answered and did not appear in his file.  (UTMB Resp. App. at 66, 69).  Chief McMillian could not say with certainty that all submitted grievances were reviewed by the grievance review board.  (*Id*. at 43-44).  As for the step 2 appeals, when asked specifically whether he appealed any of the unfavorable step 1 responses, Plaintiff testified, "I redone them [the grievances] again, you know, because I felt like I wasn't satisfied, you know.  I wasn't satisfied with what they said and I tried to write it again and sometime I wouldn't get the answer back."  (*Id*. at 68).  The appendix supports Plaintiff's belief that he appealed unfavorable step 1 grievance determinations.  He submitted multiple grievances regarding his wheelchair deprivation claim (*see e.g.*, UTMB App. Ex. N at 14, 27), and one medical staffer returned a wheelchair deprivation grievance to the investigating office without answering the allegations because the general complaint had been "answered over and over again."  (*Id*. at 25).  Additionally, on at least one occasion, the jail staff considered what is clearly an appeal of an unfavorable step 1 grievance to be a new step 1 grievance, not a step 2 appeal.  (*See id*. at 35-37).

In the UTMB Defendants' reply, they contend that Plaintiff's ignorance of the Jail's grievance procedures does not excuse him from failing to file a step 2 appeal.  (UTMB Reply at 4) (citing *Aguirre v. Dyer*, 233 Fed.Appx. 365 (5th Cir. 2007) (unpublished) (citing *Fisher*, 174 F.3d at 714).  The issue in this case, however, is the Defendants' alleged failure to make any reasonable effort to inform him of the procedures as well as their alleged actions that frustrated his attempts to file both initial grievances and appeals.  Plaintiff identified specific evidence in the record that could

lead a reasonable jury to conclude that the grievance process in place at the Jail was not an available remedy and that Plaintiff should be excused from the exhaustion requirement. *Holloway*, 685 F.2d at 154; *Arnold v. Goetz*, 245 F. Supp.2d 527, 537 (S.D.N.Y. 2003) ("[a] grievance procedure which is not made known to inmates is not an 'available' administrative remedy"). Since genuine issues of material fact remain, Defendants' motion for summary judgment on the issue of exhaustion should be **DENIED**. *Celotex*, 477 U.S. at 322-23.

## C.     Americans with Disability Act and Rehabilitation Act Claims

Defendants Dallas County and UTMB also move for summary judgment on Plaintiff's claims under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.[11] (Dallas MSJ Br. at 7; UTMB MSJ Br. at 6).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act of 1973; in fact, the statute specifically provides that "the remedies, procedures and rights" available under Section 504 shall be the same as those available under Title II. 42 U.S.C. § 12133; *Hainze*, 207 F.3d at 799. Under both the ADA and the Rehabilitation Act, a claimant must demonstrate that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or denied benefits of,

---

[11] Defendants Prater, Porter, and Chapa also move for summary judgment on Plaintiff's ADA and Rehabilitation Act claims. (*See* Dallas MSJ Br. at 7). Plaintiff, however, only raised these claims against Defendants Dallas County and UTMB, not the individual defendants. (*See* Compl. at 9-10). Moreover, the ADA and Rehabilitation Acts only provide for relief against public entities, which do not include individual defendants. *See* 42 U.S.C. § 12131; 29 U.S.C. § 794; *Meredith v. Nowak*, 2008 WL 4808905, at *4 n.4 (E.D. La. Oct. 31, 2008) (citing cases). Accordingly, their motion for summary judgment should be **DENIED** as **moot**.

services, programs, or activities by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997).

None of the parties dispute that Plaintiff is a qualified individual with a disability or that Dallas County and UTMB are public entities subject to the provisions of the ADA and Rehabilitation Act. Defendants Dallas County and UTMB move for summary judgment on the grounds that there is an absence of evidence to establish that (1) Plaintiff was excluded from participating in, or denied benefits of, services, programs or activities at the Jail and (2) such exclusion was due to discrimination on account of Plaintiff's disability. (Dallas MSJ Br. at 9; UTMB MSJ Br. at 7). UTMB also moves for summary judgment on grounds that Plaintiff cannot show UTMB or any of its employees deprived him of his wheelchair. (UTMB MSJ Br. at 7).

### 1. Exclusion from Services, Programs, or Activities

Plaintiff's pending ADA and Rehabilitation Act claims are based on the undisputed fact that he was confined in a single cell and deprived of the use of his wheelchair for approximately three months. Under the ADA, discrimination includes a defendant's failure "to make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 673 (5th Cir. 2004). Because public entities must make modifications that are necessary to avoid discrimination on the basis of disability, liability does not depend on evidence of purposeful discrimination. *See Patterson v. Kerr County*, 2007 WL 2086671, at *7 (W.D. Tex. July 18, 2007). A plaintiff simply must show that "but for" his disability, he would not have been deprived of the services or benefits he desired. *See id.* (citing *Wisconsin Cmty. Servs., Inc. v. City*

*of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006)).  In the prison context, failure to accommodate the needs of a disabled prisoner is discrimination if it causes the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See McCoy v. Tex. Dep't of Crim. Justice*, 2007 WL 2331055, at \*7 (S.D. Tex. Aug. 9, 2006) (citing *U.S. v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'").

Defendants Dallas County and UTMB contend that although Plaintiff did not have access to a wheelchair while in his single cell, there is no evidence that he was not deprived of any services, programs, or activities because whenever he left his cell for any reason, jail staff provided him with a wheelchair.  (Dallas MSJ Br. at 9; UTMB MSJ Br. at 8).  These Defendants also contend that Plaintiff's 8'9" x 6' cell was small enough that he could move about on his own without use of his wheelchair.  (Dallas MSJ Br. at 9).  In support of these contentions, they cite to Plaintiff's deposition testimony where he stated the jail staff provided him with a wheelchair whenever he left his cell.  (Dallas App. at 77; UTMB App. Ex. H at 29:2-4).  Based on this deposition testimony, Defendants Dallas County and UTMB have met their initial summary judgment burden.  *Celotex*, 477 U.S. at 317.

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Id*. at 324.  Plaintiff testified in his deposition that his wheelchair would have fit in his single cell, and that without it, he was forced to sleep on the floor, crawl to the toilet, and crawl to the window to get his food and

medication. (UTMB Resp. App. 38, 156-57). Given this evidence, a reasonable jury could find that the deprivation of Plaintiff's wheelchair subjected him to more pain and punishment than non-disabled prisoners. *See U.S. v. Georgia*, 546 U.S. at 157; *McCoy*, 2007 WL 2331055, at *7. A reasonable jury could also conclude that the deprivation of Plaintiff's wheelchair excluded him from participating in, or denied benefits of, services, programs or activities at the Jail. *See id*. Accordingly, a genuine issue of material fact exists.

### 2.      Discrimination on Account of Plaintiff's Disability

Defendants Dallas County and UTMB also contend that there is no evidence to show that the decision to withhold Plaintiff's wheelchair was on account of his disability. (Dallas MSJ Br. at 9; UTMB MSJ Br. at 8). Rather, the decision to withhold his wheelchair was based on legitimate security concerns because Plaintiff allegedly concealed contraband in it. On October 30, 2004, based on a tip from an anonymous inmate, two officers at the Jail searched Plaintiff's wheelchair and discovered Trazadone, Xanax, Darvocet, Tylenol #3, tweezers, medical scissors, syringes, a scalpel, an 18-gauge needle, an intravenous flush, and a 5-inch piece of metal. (UTMB App. Ex. I at 98; Ex. L at 13-14). Based upon discovery of these contraband items, Jail staff placed Plaintiff on administrative custody in a single cell and confiscated his wheelchair. (*Id*. Ex. N at 17, 41). By identifying evidence in the record showing that Jail staff confiscated Plaintiff's wheelchair due to the discovery of contraband, Defendants Dallas County and UTMB have met their initial burden to show that they did not deprive Plaintiff of his wheelchair on account of his disability.

The burden now shifts to Plaintiff to identify evidence that the wheelchair confiscation occurred on account of his disability. Plaintiff contends that the issue is not whether Defendants Dallas County and UTMB had a valid reason for confiscating the wheelchair, but rather whether

reasonable accommodations were made for his disability as required under the ADA and Rehabilitation Act. (UTMB Resp. at 10). For instance, Defendants could have confiscated the contraband without depriving Plaintiff of his wheelchair for three months. In other words, the reason for confiscating Plaintiff's wheelchair is a fact issue that must be weighed along with other facts about whether the accommodations were reasonable. Other courts that have considered this issue have found that safety and security concerns are fact issues relevant to the question of whether accommodations were reasonable. *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996); *Randolph v. Rodgers*, 170 F.3d 850, 859 (8th Cir. 1999). Accordingly, the determination of whether the confiscation of Plaintiff's wheelchair and his confinement to a single cell unequipped for disabled inmates for three months was justified under the circumstances is a question of fact.

### 3. UTMB's Involvement in Wheelchair Deprivation

Finally, Defendant UTMB contends it was not responsible for confiscating Plaintiff's wheelchair. (UTMB MSJ Br. at 7). In support, it cites to an incident report from the Jail in which Officer Olubode physically confiscated the wheelchair. (UTMB App. Ex. L at 13-14). According to UTMB, since the Jail employs Officer Olubode, it was not responsible for confiscating Plaintiff's wheelchair. (*See* UTMB MSJ Br. at 7-8; UTMB Reply at 1).

In response, Plaintiff cites to evidence in the record that the decision to provide a wheelchair to an inmate was a medical decision and that UTMB was the ultimate authority on medical issues. (UTMB Resp. App. Ex. A at 5-6 (stating that the decision whether an inmate needed or was to receive a wheelchair was a medical decision); Ex. F at 89 (Defendant Bowers stating that physicians could prescribe wheelchairs to disabled inmates); Ex. R at 300 ("Decisions and actions regarding the health care services provided to jailees are the sole responsibility of qualified health care

personnel and will not be compromised for security reasons")).  Additionally, Plaintiff's grievances concerning the deprivation of his wheelchair were classified as medical grievances and sent to medical staff for resolution.  (*See e.g. id.* Ex. I at 178-79).  From this evidence, Plaintiff has shown that genuine issues of material fact remain as to whether UTMB was responsible for confiscating and returning Plaintiff's wheelchair.

In summary, Plaintiff has shown that genuine issues of material fact remain regarding whether he was excluded from participating in, or denied benefits of, services, programs or activities at the Jail and whether such exclusion was due to discrimination on account of his disability.  Accordingly, Defendants Dallas County and UTMB's motions for summary judgment on Plaintiff's ADA and Rehabilitation Act claims should be **DENIED**.  *Celotex*, 477 U.S. at 322-23.

**D.**    **42 U.S.C. § 1983 Claims**

Defendants next move for summary judgment on Plaintiff's claims arising under 42 U.S.C. § 1983 for alleged unsanitary conditions of confinement, failure to provide prompt and adequate medical treatment, and failure to accommodate his disability through deprivation of his wheelchair, including failing to provide a handicapped-accessible shower chair and van.  (Compl. at 10-17).

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).  Section 1983 reaches only those constitutional injuries caused by persons acting under

color of state law. *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980).

### 1. Statute of Limitations Defense by Dallas County[12]

Defendant Dallas County initially contends that Plaintiff's § 1983 claims are barred by the statute of limitations. (Dallas MSJ Br. at 14). Plaintiff left the Jail on April 11, 2005, but did not effect service on Defendant Dallas County until November 15, 2007. (Docket # 177). According to Defendant Dallas County, Plaintiff's claims are barred because he failed to exercise due diligence and did not effect service until seven months after the two-year limitations period expired.

Plaintiff contends his claims against Dallas County are not barred because they relate back to his original complaint, which was filed on January 5, 2005, during his confinement in the Jail and before the limitations period began to run. Under Rule 15(c), an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When an amendment changes the party or the naming of the party against whom a claim is asserted, it relates back to the original pleading only if Rule 15(c)(1)(B) is satisfied and if, "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

This Court previously determined that Plaintiff's original claims were embodied in his

---

[12] Although Defendant Dallas County raises limitations as its final basis for summary judgment (*see* Dallas MSJ Br. at 14-15), the Court considers this issue before addressing the merits of Plaintiff's § 1983 claims since timeliness is a jurisdictional prerequisite to suit. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

January 24, 2005, amended complaint (docket #4), his response to the MJQ questionnaire (docket #8), and his Rule 7(a) reply (docket #123).  *See Coker*, 2007 WL 3022575, at *5 n.6.  The only claims not stated in the original complaint were those for lack of a handicapped accessible shower chair and van.  *See Coker v. Dallas County Jail*, 2008 WL 763166, at *1 (N.D. Tex. Mar. 19, 2008) (Lynn, J.) (dismissing ADA and Rehabilitation Act claims for lack of handicapped shower chair and van against Defendant UTMB as barred by limitations because not stated in the original complaint and did not relate back).  Plaintiff stated the remaining § 1983 claims as original claims, therefore satisfying the requirements of Rule 15(c)(1)(B).

As for Plaintiff naming Defendant "Dallas County" instead of "Dallas County Jail," Plaintiff served the Jail and the individual Dallas County Defendants within the Court-granted extensions of the 120-day time period prescribed by Rule 4(m).  (*See* docket ##19, 24-27).  Dallas County had notice of this action because it shares counsel and therefore an identity in interest with the original defendants.  *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (notice imputed to the newly added city defendant through shared counsel with the original defendant officer).  Furthermore, Defendant Dallas County knew or should have known that in filing suit against the Dallas County Jail, Plaintiff would file suit against the county itself.  *See Chancery Clerk of Chickasaw County, Miss. v. Wallace*, 646 F.2d 151, 160 (5th Cir. 1981) (allowing plaintiff who had sued the wrong parties to amend his pleadings on appeal); *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 315 (5th Cir. 1991) (holding that the city defendant was not prejudiced by the plaintiff's failure to file suit against the proper legal entity because the city received notice conducted its case exactly as it would have had the plaintiff sued the proper entity).

In summary, Dallas County's motion for summary judgment on the basis of limitations

should therefore be **GRANTED** as to the lack of handicapped accessible shower chair and van claims but **DENIED** in all other respects.

## 2.    Qualified Immunity Defense for Individual Defendants[13]

The individual defendants move for summary judgment on Plaintiff's § 1983 claims against them in their individual capacities on the basis of qualified immunity. (Dallas MSJ Br. at 12-13; UTMB MSJ Br. at 11-13).

A governmental employee who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *White*, 959 F.3d at 544.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden, the plaintiff must present specific facts to defeat the claimed immunity. *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003); *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995).

---

[13] Although Defendants Porter, Prata, and Chapa raise qualified immunity as their fourth grounds for summary judgment (*see* Dallas MSJ Br. at 12-13), the Court considers the issue prior to their motion on the merits of Plaintiff's § 1983 claims since immunity is a threshold question. *See Anderson v. Creighton,* 483 U.S. 635, 646 n.5 (1987).

### a.    *Constitutional Violation*

The threshold question to a determination of whether Defendants are entitled to qualified immunity is whether, taken in the light most favorable to the Plaintiff, the facts alleged show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The Court need inquire no further if no constitutional right would have been violated based on the facts alleged by Plaintiff and taken in the light most favorable to him. *Id.* at 201.

A pre-trial detainee's treatment and his conditions of confinement flow from the substantive due process guarantees of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Fifth Circuit recognizes, however, that "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). As a result, the Fifth Circuit applies "the same standard for assessing the constitutional claims of both pretrial detainees and state inmates" under the Eighth Amendment. *Id.* The Eighth Amendment to the Constitution of the United States proscribes cruel and unusual punishments. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment requires that conditions of confinement be humane, and prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care as well as take reasonable measures to guarantee their safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement absent a showing of "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* at 828, 834. To establish deliberate indifference, an inmate must show that the prison official (1) was "aware of the facts from which an inference of excessive risk to the prisoner's health or safety could be drawn," and (2) "actually drew an inference that such potential for harm existed." *Estelle v. Gamble*, 429

U.S. 97, 106 (1976); *see also Farmer*, 511 U.S. at 837 (noting that deliberate indifference under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety). Deliberate indifference "describes a state of mind more blameworthy than negligence" but is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Deliberate indifference is "an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

In this case, none of the individual defendants dispute that the rights they allegedly violated were clearly established. (*See* UTMB MSJ Br. at 13-15 and 19-20 (wheelchair deprivation and unsanitary conditions); Dallas MSJ Br. at 5-7 (same); *see also Ruiz v. Estelle*, 503 F.Supp. 1265, 1345 (S.D. Tex. 1980) (disabled inmates must be provided with physical accommodations necessary because of their disabilities, including adequate toilet and shower facilities, as well as wheelchairs and other mobility aids), *aff'd in part and rev'd in part*, 679 F.2d 1115 (5th Cir. 1982), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042, 103; *Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004) (citing *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)) (filthy cell conditions may constitute an Eighth Amendment violation); *Reed v. Dallas County Sheriff's Dept.*, 2004 WL 2187104, at *4 (N.D. Tex. Sept. 28, 2004) (citing *Sanford v. Brookshire*, 879 F. Supp. 691, 693 (W.D. Tex. 1994))("[P]rison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation")).

    b.    *Objective Reasonableness*

If the Court can find a constitutional violation under the favorable view of the submissions, the next sequential step is to determine whether the violated constitutional right was clearly estab-

lished within the specific context of the case.  *Saucier*, 533 U.S. at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.

### 1.)    *Unsanitary Conditions*

With regard to the individual Dallas County Defendants, the Court previously denied summary judgment on the basis of  qualified immunity for on Plaintiff's claim of unsanitary conditions.  *Coker*, 2007 WL 3022575, at *21-22.  Because this determination has already been made, the Court should not reconsider its prior ruling.

As for Defendants Moody and Bowers, they assert they are entitled to qualified immunity as to this claim because their actions were objectively reasonable.  (UTMB MSJ Br. at 19-20).  Plaintiff contends their actions were not objectively reasonable because they had knowledge of the filthy conditions in the handicapped shower, knew of the risk such conditions posed, and yet did nothing.  (UTMB Resp. at 28) (citing UTMB Resp. App. at 82-86, 98, 100-03; *see* Part IV.D.3.c., *infra*).  Given the evidence in the record regarding the medical staff's responsibility for controlling infection and ensuring sanitary conditions at the Jail, and viewing it in the light most favorable to Plaintiff as the Court must, the Court cannot find that the alleged failure to address the deplorable conditions in the shower was objectively reasonable.

Defendant Bowers and Moody assert in their reply that Plaintiff's lay opinion is insufficient to overcome Dr. Mayhall's expert opinion that there was no evidence that Plaintiff received care in an unsanitary or unsafe environment.  (UTMB Reply at 6; *see* UTMB App. Ex. B, at ¶5).  Dr. Mayhall contends there is no evidence of unsanitary conditions, but his February 23, 2007 affidavit does not acknowledge the findings of the February 2005 Health Management Associates report,

which found deplorable sanitary conditions in the Jail, including the presence of MRSA. Additionally, Dr. Mayhall's assertion of "no evidence" is contradicted by the sworn affidavits of several inmates, including Plaintiff, attesting to the presence of human waste, blood, and discarded colostomy bags in the handicapped shower. While these inmates are not medical doctors, it does not take a licensed physician to say that the presence of human waste and blood in a shower is unsanitary.

Accordingly, the motion of Defendants Bowers and Moody for summary judgment on the basis of qualified immunity from Plaintiff's claim of unsanitary conditions should be **DENIED**. *Saucier*, 533 U.S. at 202; *see Coker*, 2007 WL 3022575, at *22 (denying qualified immunity summary judgment motion of the individual Dallas County Defendants on Plaintiff's claim of unsanitary conditions) (citing *Gates*, 376 F.3d at 338).

### *2.)     Wheelchair Deprivation*

Defendants Porter, Prater, and Chapa contend they are entitled to qualified immunity because they were not personally involved in the decision to take or withhold Plaintiff's wheelchair. (Dallas MSJ Br. at 13). As discussed in Part IV.D.5.a, *infra*, Plaintiff identified evidence in the record to rebut this assertion. Given the fact issues concerning their involvement, it would not be reasonable to deprive a wheelchair-bound inmate of his means of mobility. By doing so, Plaintiff was forced to crawl on the ground using his left arm and infected left leg to attend to basic human needs. Such conduct on the part of Defendants Prater, Porter, and Chapa clearly would be unlawful to a reasonable officer. *Saucier*, 533 U.S. at 202. The individual Dallas County Defendant's motion for summary judgment on the grounds of qualified immunity for Plaintiff's wheelchair deprivation claim should be **DENIED**.

Defendants Bowers and Moody assert they are entitled to qualified immunity on Plaintiff's wheelchair deprivation claim because their actions were objectively reasonable. (UTMB MSJ Br. at 19-20). Plaintiff identified evidence in the record to show that he required use of his wheelchair at all times and that he struggled and experienced pain when he had to stand. (*See* Part IV.D.5.c, *infra*). He cited to evidence in the record to raise a question of fact as to whether Defendant Bowers ignored his frequent pleas for assistance when he walked past his cell. (UTMB Resp. App. at 241-242, ¶11). Plaintiff also cited to evidence showing that Defendant Moody knew he experienced pain when he stood and that it would be difficult for him to get anywhere in his cell. (*Id*. at 104-05, 108-09). Given Plaintiff's constitutional right to reasonable accommodation in a wheelchair, the knowing deprivation of his means of mobility would clearly be unlawful to a reasonable officer in the same situation. *Saucier*, 533 U.S. at 202. Defendant Bowers and Moody's motion for summary judgment on the grounds of qualified immunity for Plaintiff's wheelchair deprivation claim should be **DENIED**.

### 3.) *Delay of Medical Care*

The Court also previously denied Defendant Moody's qualified immunity summary judgment motion as to Plaintiff's claim against her for delay in medical care. *Coker*, 2007 WL 3022575, at *21-22. This ruling should likewise not be reconsidered.

In summary, the individual defendants' motions for summary judgment on Plaintiff's § 1983 claims against them in their individual capacities on the basis of qualified immunity should be **DENIED.**

### 3. Unsanitary Conditions Claim

Defendants also move for summary judgment on the merits of Plaintiff's § 1983 unsanitary

conditions claim against Prater, Porter, and Chapa in their individual and official capacities,[14] Defendant Dallas County, and Defendants Moody and Bowers in their individual capacities.[15]

In order for a prisoner to establish a "conditions-of-confinement" claim under the Eighth Amendment, the prisoner must show that the deprivation alleged was sufficiently serious and that the prison official possessed a sufficiently culpable state of mind. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Harper v. Showers*, 174 F.3d 716, 719-20 (5th Cir. 1999). "[P]rison authorities may not withhold from prisoners the basic necessities of life, which includes reasonably adequate sanitation." *Reed*, 2004 WL 2187104, at *4. Filthy cell conditions may constitute an Eighth Amendment violation. *Gates*, 376 F.3d at 338. Other circuits have made similar holdings; the Eighth Circuit has held that a prisoner being placed in a cell covered with filth and human waste for a two-year period without proper cleaning supplies constitutes cruel and unusual punishment. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) ("[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time."); *see also McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (holding that three days in a feces-covered cell states a claim upon which relief could be granted).

### a. Defendants Prater, Porter, and Chapa

Defendants Prater, Porter, and Chapa move for summary judgment on the grounds that there

---

[14]Plaintiff's suit against Defendants Porter, Prater, and Chapa in their official capacities is treated as an action against the entity that employs the individual or agent sued so long as the government entity receives notice and an opportunity to respond. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Here, Dallas County, the employer for Defendants Porter, Prater, and Chapa, received notice and had an opportunity to respond. The suit against these individuals in their official capacity is therefore one against Dallas County. *Id.*

[15] Plaintiff does not pursue claims against Defendants Bowers and Moody in their official capacities. (UTMB Resp. at 18; *see* Compl.). Even if he had, no such claims would remain because the Court previously dismissed Plaintiff's § 1983 claims against UTMB. (Docket ##194, 201). Accordingly, the motion for summary judgment by Defendants Bowers and Moody on the grounds of Eleventh Amendment immunity should be **DENIED** as **moot**. (*See* UTMB MSJ Br. at 10-11) (asserting Eleventh Amendment immunity).

is "no evidence" to show that they were aware of the unsanitary shower conditions or that the unsanitary conditions were implemented or maintained with the intent punish Plaintiff or other inmates. (Dallas MSJ Br. at 5-6). They also assert that Plaintiff failed to allege personal involvement, and they deny responsibility for performing sanitation services. *Id*.

The Court previously considered the same arguments set forth by Defendants Prater, Porter, and Chapa and found that Plaintiff's evidence contradicted the assertion of lack of awareness, lack of punitary intent, and lack personal involvement. *Coker*, 2007 WL 3022575, at *18-21. Based on the evidence already submitted, the Court found that genuine issues of material fact remained as to whether the unsanitary conditions were sufficiently serious and whether these defendants possessed a sufficiently culpable state of mind.

Additionally, in his response to the instant motion Plaintiff provided additional evidence to support his original claims. (Dallas Resp. at 11). He testified in his deposition that he personally complained to Defendants Prater, Porter, and Chapa about the conditions of the shower and that they ignored his request for cleaning supplies. (Dallas Resp. App. at 113, 119). All three officers agreed that it would be unsanitary and potentially dangerous to have blood and waste in the shower, and all three stated that they were responsible for making sure the shower was clean. (*Id*. at 75-78, 83-86, 97, 99-101). Based on the evidence previously considered and the supplemental evidence submitted in support, the Court finds that Plaintiff identified genuine issues of material fact in the record such that a reasonable jury could find in his favor on his claim of unsanitary conditions. Accordingly, Defendants Prater, Porter, and Chapa's motion for summary judgment on Plaintiff's claim of unsanitary conditions against them in their individual and official capacities should be **DENIED**. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249

### b. Defendant Dallas County

It is not apparent whether Defendant Dallas County moves for summary judgment on Plaintiff's § 1983 claim for unsanitary conditions. The body of the brief only references alleged evidentiary deficiencies against the individual defendants, but the last sentence moves on behalf of the Dallas County Defendants, which includes Defendant Dallas County. (Dallas MSJ Br. at 5-6; *see* Dallas MSJ at 2 ("Dallas County Defendants" includes Defendant Dallas County)). Defendant Dallas County did not contend that Plaintiff lacked evidence of municipal liability for unsanitary conditions at the Jail, nor did it present any arguments or evidentiary support other than those advanced by Defendants Porter, Prata, and Chapa. (*See* Dallas MSJ Br. at 5-6). Plaintiff asserted in his response that Defendant Dallas County's failure to contest municipal liability means that the motion is limited to the individual Dallas County Defendants. (Dallas Resp. at 10). Defendant Dallas County did not file a reply to contest this assertion. Given the failure to present any evidence or arguments particular to municipal liability, the Court finds that the instant motion is limited to the individual Dallas County Defendants.

### c. Defendants Bowers and Moody

Defendants Bowers and Moody move for summary judgment on Plaintiff's § 1983 claim against them in their individual capacities for unsanitary conditions on the grounds that neither UTMB nor its employees were responsible for sanitation at the Jail. (UTMB MSJ Br. at 19). In support, they cite to the deposition of Leslie Sweet, who acknowledged that the County was responsible for maintaining sanitation in the cells, bathrooms, and showers through the use of inmate trustees for the cleaning itself. (UTMB App. Ex. G at 17:21-18:9). They also cite to Defendant Moody's deposition, who testified that those in charge of security at the Jail were responsible for

cleaning.  (*Id*. Ex. F at 64:8-65:6).  They also cite to Plaintiff's deposition testimony, in which he admitted he never saw Defendants Bowers or Moody clean the handicapped shower, and he never asked either of them to clean it.  (*Id*. Ex. H at 110).  Based on this evidence, they met their initial summary judgment burden.  *Celotex*, 477 U.S. at 324.

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Id*.  Plaintiff relies on the testimony of Defendants Bowers and Moody to rebut their assertion that they were not responsible for sanitation at the Jail.  (UTMB Resp. at 27-28).  He cites to Defendant Bowers' testimony that UTMB was responsible for infection control at the Jail, that it had a role to play in ensuring sanitary conditions at the jail, and that it had the authority to make requests that areas in the infirmary be cleaned.  (UTMB Resp. App. at 83-86 (61:14-62:22, 67:3-68:2)).  He also cites to the acknowledgment of Defendants Bowers and Moody that failing to clean the shower areas could spread infectious disease and that allowing human blood and waste to remain in the shower could pose a significant health concern.  (*Id*. at 82 (57:9-16), 86 (68:14-17), 98 (63:10-18), 100 (91:19-23), 101-02 (103:11-104:8)).  They also acknowledge that if they had known there was blood and feces in the shower, they should have notified security.  (*Id*. at 85 (67:3-12), 98-99 (63:19-64:12), 103 (105:14-22)).  Finally, he cites to evidence that Defendants Bowers and Moody knew the floor of the handicapped shower was covered with blood, feces, and other waste but did nothing about it. (*Id*. at 241-42).

Given the conflicting interpretations of the testimony, the Court finds that genuine issues of material fact remain as to whether the shower conditions were sufficiently serious and whether Defendants Bowers and Moody's failure to act indicated a sufficiently culpable state of mind.

Accordingly, summary judgment for Defendants Bowers and Moody in their individual capacities on Plaintiff's claim of unsanitary conditions should be **DENIED**. *Celotex*, 477 U.S. at 324.

### 4.    Denial of Adequate and Prompt Medical Treatment Claim

Defendants also move for summary judgment on the merits of Plaintiff's § 1983 claim for denial of adequate and prompt medical treatment claim against Defendant Dallas County and against Defendant Moody in her individual capacity. (Compl. at 12-14).

Denying or delaying access to medical care can constitute deliberate indifference to the medical needs of an inmate, as can interfering with treatment once prescribed. *Estelle*, 429 U.S. at 105; *see e.g. Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Walker v. Butler*, 967 F.2d 176, 178 (5th Cir. 1992); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). To establish deliberate indifference to medical needs, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). An incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. (*Id.*) Nor does the failure to alleviate a significant risk that the official should have perceived, but did not. *Farmer*, 511 U.S. at 838. Mere negligence or medical malpractice does not rise to the level of a constitutional violation, *Domino*, 239 F.3d at 756, nor does disagreement with a prescribed course of treatment, *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing cases). For a delay in medical care to constitute an Eighth Amendment violation, the delay must result in substantial harm, such as lasting complications. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

### a. *Defendant Dallas County*

To hold a municipality liable for an episodic act or omission, the plaintiff must show: (1) that a municipal employee acted with subjective deliberate indifference; and (2) that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). The subjective deliberate indifference standard focuses on what the municipal employee actually knew. The objective deliberate indifference standard considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002).

### 1.) *Subjective Deliberate Indifference*

The Court first considers the required showing of subjective deliberate indifference by the municipal employees. Defendant Dallas County asserts there is no evidence that the detention authorities deliberately or recklessly ignored a substantial risk of serious harm arising from Plaintiff's medical care at the Jail. (Dallas MSJ Br. at 4). Specifically, it contends that Plaintiff's medical record shows receipt of extensive medical care and treatment during his confinement. Defendant Dallas County also contends there is no competent summary judgment evidence to show that Plaintiff sustained any harm or injury as a result of any act or omission of his medical care in the Jail. *Id.* In support, it cites to an affidavit by its medical expert, Dr. Skinner, averring there is "no evidence" to support Plaintiff's constitutional claims. (*See* Dallas MSJ at 7, ¶¶13-15) (citing to Dallas App. at 243-44). Dr. Skinner's affidavit does not address Plaintiff's claim about how the medical care he received at the Jail or delay in transferring him to Parkland caused him to suffer for

weeks and caused his condition to worsen requiring surgery, debridement, and permanent disfigurement; it only references Plaintiff's numerous clinic visits and hospital admissions during his confinement and draws conclusory assertions.

To rebut Dr. Skinner's averment, Plaintiff provided specific references to the summary judgment record to show that questions of fact remain as to whether the employees of Dallas County exhibited subjective deliberate indifference to Plaintiff's medical needs. For instance, he referenced this Court's previous finding of evidence that he suffered from multiple infections in his left leg that led to at least three surgeries, and that these infections persisted for weeks before he was taken to Parkland Hospital. (Dallas Resp. at 7) (citing *Coker*, 2007 WL 3022575, at *17). He also cited to two of Defendants' own experts, who agreed that his infections improved when he went to Parkland and worsened when he returned to the Jail. *Id.* (citing Dallas Resp. App. at 127-28, 136-48). His medical records corroborate these opinions. *Id.* (citing Dallas Resp. App. at 167). Plaintiff also identified evidence to show that Defendants Prater, Porter, and Chapa knew that he suffered a substantial risk of harm, and that they were responsible for delaying his treatment. *Id.* (citing Dallas Resp. App. at 92, 258, 263). Given this evidence, Plaintiff has met his burden to show that genuine issues of material fact remain as to whether the employees of Defendant Dallas County exhibited subjective deliberate indifference to his constitutional right to adequate and prompt medical treatment.

### 2.) *Custom or Policy*

Defendant Dallas County asserts there is no evidence of a custom or policy adopted or maintained with objective deliberate indifference to deprive Plaintiff of essential medical care and treatment during his confinement. (Dallas MSJ Br. at 4).

An official policy is a "policy statement, ordinance, regulation or decision that is officially adopted and promulgated" by the county's lawmaking officers or official to whom the lawmakers have delegated policy-making authority. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam). A custom, on the other hand, is a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. To show that a policy or custom was adopted and maintained with deliberate indifference to the known or obvious fact that constitutional violations would result "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309-10 (5th Cir. 2004). Unlike the deliberate indifference standard applied to individual employees, this standard is an objective one; it considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. *Lawson*, 286 F.3d at 264 (citing *Farmer*, 511 U.S. at 841; *Hare*, 74 F.3d at 643 n. 4). Therefore, constructive notice is adequate. *Id*.

Plaintiff, as the non-movant, must now direct the Court's attention to evidence in the record sufficient to establish a genuine issue of material fact regarding an unconstitutional custom or policy in place at the Jail. *Celotex*, 477 U.S. at 323-24. Plaintiff cites to corroborating testimony from inmates about his delay in receiving care and to Defendant Porter's knowledge of his complaints and need for medical care. (*Id*. at 92 (Porter deposition), 258 (Jones affidavit), 263 (Stribling affidavit)). He also cites to a February 2005 evaluation from Health Management Associates ("HMA") that found systemic failures in medical care at the Jail, including barriers to inmate requests for medical

attention, life-threatening housing arrangements, lack of infection control, and poor to non-existent monitoring of chronically ill inmates. (*Id*. at 317, 328-29, 339-40, 343). *See Duvall v. Dallas County*, 2008 WL 4561563, at *8 (N.D. Tex. Oct. 10, 2008) (Lindsay, J.) (relying, in part, on the same HMA report to deny summary judgment on defendant's claim of no evidence of unconstitutional policy or custom). Given the affidavits from the other inmates and the HMA report, Plaintiff has met his burden to identify evidence in the record of a municipal policy or custom adopted or maintained with objective deliberate indifference.

Since Plaintiff has shown that fact issues remain concerning subjective deliberate indifference by Dallas County employees and a municipal policy or custom adopted or maintained with objective deliberate indifference, he has met his burden to show that issues of fact remain about whether Defendant Dallas County is subject to municipal liability. *See Olabisiomotosho*, 185 F.3d at 526. Based on these remaining issues of genuine material fact, the Court finds that a reasonable jury could find in Plaintiff's favor on his claim of denial of adequate and prompt medical treatment. Accordingly, Defendant Dallas County's motion for summary judgment should be **DENIED** as to this claim. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249.

### b.    *Defendant Moody*

Defendant Moody moves for dismissal of Plaintiff's claim on the grounds that Plaintiff failed to state an actionable claim under § 1983 because his medical records show she did not delay in providing adequate treatment for his recurrent cellulitis and leg infections. (UTMB MSJ Br. at 17). In support, she refers the Court to Plaintiff's medical records from his incarceration at the Jail and Parkland Hospital but does not provide any references to any specific records. (*Id*. at 17) (citing UTMB App. Ex. I and J). She also references the affidavit of Dr. Glen Mayhall, M.D., who

reviewed Plaintiff's medical records and determined that in contrast to Plaintiff's assertion of delayed medical care, UTMB personnel worked aggressively with Parkland medical providers to determine appropriate care. (*Id*. Ex. B at 2-3, ¶8).

In the previous motion for summary judgment on the issue of qualified immunity, the Court considered the same evidence presented here and found that genuine issues of material fact remained as to Plaintiff's claim of delay in medical care against Defendant Moody. *Coker*, 2007 WL 3022575, at *18. Indeed, the Mayhall affidavit is identical to the one submitted earlier. (*See* UTMB App. Ex. B; docket #133 at 5-7). In its previous findings, the Court noted that

> [w]hile Defendant Moody presented evidence that shows she provided Plaintiff with extensive medical treatment for his lower leg infections, she provides *no evidence that addresses Plaintiff's claim that the delay in transferring him to Parkland caused him to suffer for weeks*, and caused his conditions to worsen requiring surgery and debridement and permanent disfigurement.

*Coker*, 2007 WL 3022575, at *18 (emphasis added). The same deficiency is present here.

In her reply, Defendant Moody asserts that she offers a "substantial amount of new evidence" to support her claim that Plaintiff does not have an actionable § 1983 claim. (UTMB Reply at 5). She then refers the Court to the three-page Mayhall affidavit, the Mayhall deposition (approximately 209 pages), Defendant Bowers's deposition (approximately 217 pages), her own deposition (approximately 221 pages), the UTMB medical records (217 pages), and the Parkland Hospital medical records (58 pages). (*Id*. citing UTMB App. Ex. B, C, E, F, I, and J). She fails, however, to provide a *single citation* to a specific record within the almost 1,000 pages she submits in support of her assertion that she did not delay access to Plaintiff's medical treatment. (*See id*.). The Court is under no duty to sift through the record in search of evidence to support a party's motion for summary judgment, and it will not do so here. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909,

915-16 & n.7 (5th Cir. 1992).

By failing to identify portions of the record to support her claim, Defendant Moody is left with only conclusory, unsubstantiated assertions that she did not violate Plaintiff's constitutional rights by delaying access to medical care. Such assertions are insufficient to meet her summary judgment burden. Additionally, Defendant Moody failed to address the factual issues the Court identified in its previous motion, and those same factual issues remain at this stage of the litigation. Defendant Moody's motion for summary judgment in her individual capacity on Plaintiff's claim of denial of adequate and prompt medical treatment should be **DENIED**. *Celotex*, 477 U.S. at 323.

### 5.    Wheelchair Deprivation

Defendants move for summary judgment on Plaintiff's wheelchair deprivation claim arising under § 1983 against Defendants Prater, Porter, and Chapa in their individual and official capacities; Defendant Dallas County; and Defendants Moody and Bowers in their individual capacities.[16] (Compl. at 14-17).

Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. Disabled inmates must be provided with physical accommodations necessary because of their disabilities, including adequate toilet and shower facilities, as well as wheelchairs and other mobility aids. *Ruiz*, 503 F.Supp. at 1345. The failure to provide wheelchairs to mobility-impaired inmates who require them can violate the Eighth Amendment if the failure to provide poses a substantial risk of serious harm. *See Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993) (granting summary judgment for the plaintiff inmate based on undisputed evidence that prison authorities denied him

---

[16] *See* note 13, *supra*.

the use of his wheelchair); *Lavender v. Lampert*, 242 F.Supp.2d 821, 849 (D. Or. 2002) (deliberate indifference to deny use of a wheelchair to inmate who lacks mobility); *Beckford v. Irvin*, 49 F.Supp.2d 170, 180-181 (W.D.N.Y. 1999) (regularly deprivation of wheelchair for extended periods of time held to be evidence of a serious medical need that defeated defendants' motion for judgment as a matter of law).

### a. *Defendants Prater, Porter, and Chapa*

Defendants Prater, Porter, and Chapa move for summary judgment on Plaintiff's wheelchair deprivation claim on three grounds. First, they assert that the decision to temporarily withhold Plaintiff's wheelchair was based on valid security concerns because detention authorities found contraband items concealed in his wheelchair. (Dallas MSJ Br. at 6-7; *see* Dallas MSJ at 7, ¶6 (citing Dallas App. at 76-77). Second, they assert that Plaintiff could move around in his cell without the use of his wheelchair. (*Id.*; *see* Dallas MSJ at 7, ¶8 (citing Dallas App. at 77)). Third, they assert that they were not personally involved in the decision to take or withhold the wheelchair and did not have the authority to return the wheelchair. For these last two assertions, the individual Dallas County Defendants fail to identify any evidentiary support in the record. (*See* Dallas MSJ).

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. With regards to the valid security reason for confiscating Plaintiff's wheelchair, Plaintiff contends the issue is not whether Plaintiff misused his wheelchair by concealing contraband, but rather whether confiscating the wheelchair for almost three months amounted to the unnecessary infliction of pain proscribed by the Constitution. (Dallas Resp. at 14). In support, he cites to the deposition of Chief Deputy Edgar McMillian, who testified that it would be improper to withhold the

wheelchair once the contraband was removed and that ongoing deprivation would only be justified if Plaintiff continued to hide contraband in the wheelchair. (Dallas Resp. App. at 57-58, 59-60). Plaintiff then cites to his disciplinary record, which records only two instances in which jail officials found contraband in Plaintiff's wheelchair. (*Id.* at 211-213). By citing to McMillian's testimony about the circumstances under which depriving an inmate of his wheelchair might be acceptable, and then showing how Plaintiff's two incident reports do not comport with those circumstances, Plaintiff has identified a genuine issue of material fact as to whether the individual Dallas County Defendants exhibited deliberate indifference.

Plaintiff next challenges the motion on the grounds that he could move about his cell without the assistance of his wheelchair. Plaintiff testified that he could move about his cell – by crawling, using his left arm and infected leg since his right side was paralyzed. (Dallas Resp. App. at 120-21). He was, however, unable to walk the short distance from his bunk to either his toilet or to the window for his food and medication. *Id.* The individual Dallas County Defendants do not dispute that Plaintiff was forced to crawl to move about his cell. (*See* Dallas Resp. App. at 9-11; Dallas MSJ Br. at 6-7). As with the security reason for confiscating his wheelchair, Plaintiff has identified a question of material fact as to whether the individual Dallas County Defendants exhibited deliberate indifference by forcing him to crawl about on his cell for approximately three months. *Lavender*, 242 F.Supp.2d at 849; *Beckford v. Irvin*, 49 F.Supp.2d 170, 180-181 (W.D.N.Y. 1999).

Plaintiff also challenges the assertion that Defendants Prater, Porter, and Chapa were not personally involved in the decision to take or withhold the wheelchair and did not have the authority to return the wheelchair. Plaintiff testified that he repeatedly asked these three defendants to return his wheelchair to no avail. (Dallas Resp. App. at 113; *see also id.* at 257 (Stribling affidavit)). Chief

Deputy McMillian testified that the individual security officers were authorized to return the wheelchair. (*Id*. at 66-67). Further, Plaintiff also testified that once he convinced Defendant Moody to return his wheelchair after three months deprivation, Defendant Prater took it away again on the next shift once he learned the wheelchair had been returned. (*Id*. at 118). Thus, Plaintiff has identified evidence in the record to rebut the individual Dallas County Defendants' assertion that they were not personally involved in the decision to take or withhold the wheelchair and did not have the authority to return the wheelchair.

Given these disputes, the Court finds that genuine issues of material fact remain as to whether Defendants Prater, Porter, and Chapa exhibited deliberate indifference to Plaintiff's serious medical needs through the deprivation of his wheelchair for approximately three months. Accordingly, their motion for summary judgment on this issue in their individual and official capacities should be **DENIED**. *Celotex*, 477 U.S. at 324.

### b.    *Defendant Dallas County*

As with the claim for unsanitary conditions, it is not apparent that Defendant Dallas County moves for summary judgment on this claim. (*See* Part IV.D.3.b, *supra*). Defendant Dallas County did not contend that Plaintiff lacked evidence of municipal liability for the wheelchair deprivation claim, nor did it present any arguments or evidentiary support other than those advanced by Defendants Porter, Prata, and Chapa. (*See* Dallas MSJ Br. at 6-7). The Court therefore finds that the instant motion is limited to the individual Dallas County Defendants.

### c.    *Defendants Bowers and Moody*

Defendants Bowers and Moody move for summary judgment on Plaintiff's claim of wheelchair deprivation on the grounds that they were not personally involved in depriving Plaintiff

of his wheelchair. Personal involvement is an essential element in a civil rights action under 42 U.S.C. § 1983. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72). Defendants Moody and Bowers point to evidence that Officer Olugbode confiscated Plaintiff's wheelchair after discovering contraband. (UTMB App. Ex. L at 13-14; Ex. I, 98-99). They also cite to Plaintiff's admission that neither of them personally confiscated his wheelchair. (*Id*. Ex. H at 113-14).

The burden now shifts to Plaintiff to direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Plaintiff challenges Defendants Bowers and Moody's assertion of lack of personal involvement. Citing to the same evidence the Court considered in Part IV.D.2.b.2.), *supra*, Plaintiff identifies evidence in the record establishing that UTMB was the ultimate authority on medical issues, including which inmates received wheelchairs. (UTMB Resp. at 8-10) (citing UTMB Resp. App. 5-6 (Sweet deposition stating that determination of wheelchair necessity was medical); 89 (Defendant Bowers stating that medical staff could provide wheelchairs to inmates); 178-79 (medical grievances go to medical staff); 300 (UTMB handbook saying decisions and actions regarding health care services are the sole responsibility of qualified health care personnel and will not be compromised for security reasons). While Defendants Bowers and Moody may not have physically confiscated Plaintiff's wheelchair, Plaintiff has identified evidence that raises a question of fact as to whether they participated in the ongoing deprivation of Plaintiff's wheelchair, and whether they had the authority to order the wheelchair returned.

The individual UTMB Defendants raise three arguments in the alternative. (UTMB MSJ at 14-15). First, Defendants Bowers and Moody move for summary judgment on the grounds that

Plaintiff did not medically need a wheelchair in a single cell because he could "stand and transfer." (UTMB MSJ at 14) (citing UTMB App. Ex. F. at 40, 181). The evidence in support of this assertion consists of deposition testimony by Defendant Moody stating that Plaintiff could stand on one leg. Defendant Bowers moves for summary judgment on the grounds that he was never aware that Plaintiff's wheelchair had been confiscated and that he never saw Plaintiff without a wheelchair. (UTMB App. Ex. E at 163). Defendant Moody moves on the grounds that although she was aware Plaintiff's wheelchair had been confiscated for security reasons, she was not aware that the deprivation posed a substantial risk of serious harm. (*Id*. Ex. F at 115, 151-54). She also cites to a clinical note from December 30, 2004, when she instructed the jail staff to return Plaintiff's wheelchair upon his return to the tank. (*Id*. Ex. I at 55).

Plaintiff challenges Defendant Bowers and Moody's assertion that Plaintiff could move about his cell without his wheelchair. In support, he cites to twelve medical records, a booking sheet, and his own declaration as evidence that he either required his wheelchair at all times or was unable to walk or transfer himself. (UTMB Resp. at 20-21) (citing UTMB Resp. App. at 128, 157, 159, 160, 163, 165, 167, 171, 174-77, 180, 182, 239-40). He also cites to Defendant Moody's deposition testimony in which she acknowledged Plaintiff struggled to stand up or transfer, experienced pain when he did so, and that she believed the signs of struggle and pain were sincere. (UTMB Resp. App. at 104-05). Through this evidence, Plaintiff has shown that questions of fact remain as to whether Plaintiff could stand and transfer on his own and whether requiring him to move about his cell, either through crawling or standing on his infected left leg, needlessly inflicted pain and suffering.

Finally, Plaintiff challenges the remaining two assertions that Defendant Bowers was

unaware of the wheelchair confiscation and that Defendant Moody was not aware the deprivation posed a substantial risk of serious harm. (UTMB Resp. at 21-24). With regards to Defendant Bowers, he cites to his own sworn testimony that he frequently asked Defendant Bowers for assistance when he walked past Plaintiff's cell on the way to the staff bathroom. (UTMB Resp. App. at 241-242, ¶11). With regards to Defendant Moody, he cites to her deposition testimony in which she acknowledged she knew Plaintiff struggled to stand up or transfer, experienced pain when he did so, and that it would be difficult for Plaintiff to get anywhere in his cell. (UTMB Resp. App. at 104-05, 108-09). Plaintiff's citation to sworn testimony thus raises questions of fact as to whether Defendant Bowers was aware of the wheelchair confiscation and whether Defendant Moody was aware of a substantial risk of serious harm.

In sum, Plaintiff has identified evidence in the record from which a reasonable jury could find in his favor. Given the existence of genuine issues of material fact as to whether Defendants Bowers and Moody exhibited deliberate indifference to Plaintiff's serious medical needs through the deprivation of his wheelchair for approximately three months, the Court finds that their motion for summary judgment should be **DENIED** in their individual capacities. *Celotex*, 477 U.S. at 324.

## V. CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED** in part and **DENIED** in part. Defendants Bowers and Moody's motion for summary judgment on the basis of Eleventh Amendment immunity should be **DENIED** as **moot**. Defendant Dallas County's motion for summary judgment should be **GRANTED** as to the lack of handicapped accessible shower chair and van because those claims are barred by limitations. The Defendants' motions should be **DENIED** in all other respects. The following claims against these

defendants remain for trial:

(1)      Dallas County and UTMB for violations of the Americans with Disabilities Act and the Rehabilitation Act;

(2)      Dallas County; Moody and Bowers in their individual capacities; and Prater, Porter, and Chapa in their individual and official capacities for violations under the Eighth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 for (a) unsanitary conditions, and (b) wheelchair deprivation; and

(3)      Dallas County and Moody in her individual capacity for violations under the Eighth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 for failure to provide adequate and prompt medical treatment.

**SO RECOMMENDED** on this 25th day of February, 2009.

_IRMA CARRILLO RAMIREZ_
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_IRMA CARRILLO RAMIREZ_
UNITED STATES MAGISTRATE JUDGE